IN THE UNITED STATES DISTRICT COURT
FOR THE Northern District of California

| | |
|---|---|
| Freedom Cheteni,            ) | |
|                             ) | |
|     Plaintiff,              ) | |
|                             ) | |
| v.                          ) | |
|                             ) | **FIRST AMENDED COMPLAINT** |
| Malia Vella and             ) | **JURY DEMAND** |
| Carrie Lopes, Individually  ) | |
|                             ) | |
|     Defendants.             ) | Case No.: 23-cv-06286-SI |

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, AND JURY DEMAND

Plaintiff Freedom Cheteni ("Plaintiff") brings this action against Defendants Malia Vella and Carrie Lopes ("Defendants") in their individual capacities, alleging violations of federal law and the United States Constitution. In support thereof, Plaintiff states as follows:

**PROCEDURAL SUMMARY**

1. On September 20, 2024, Plaintiff received Judge Susan Illston's order—a moment that signified both an end and a new beginning. Seated in a classroom at The VR School, surrounded by the cutting-edge technology that embodies his mission, Plaintiff reflected on the arduous journey that led here.

2. Defendants California Deputy State Superintendent Malia Vella and Director of Federal EANS for Local Education Agencies, Carrie Lopes, had repeatedly threatened, both in writing and in person, that Plaintiff's quest for prospective injunctive relief concludes on September 30, 2024 and they would personally ensure I was denied any due process of law to protect my interests as the funder and founder of my federally funded School.

3. Defendants assured federal administrative law judges that Plaintiff was never denied the opportunity to make and enforce any contracts, asserting that California actively Safeguarded his Fourteenth Amendment rights. They claimed a quasi-judicial trial had been scheduled by the state of California, where Plaintiff would present all evidence, affidavits, and cross-examine them on prospective relief to make and enforce contracts before their sunset on June 30, 2025.

4. Convincing U.S. Secretary of Education Miguel Cardona that Plaintiff had not exhausted statutory due process under federal law and the U.S. Constitution, they urged him to withhold a decision until the evidentiary hearing concluded and an order was entered by Administrative Law Judge Julie Cox. Secretary Cardona concurred, finding that the due process established by California, as presented by Defendants, was the appropriate Forum for the federal questions in this case.

5. Determined not to abandon his mission, Plaintiff endeavored to seek justice for himself and compiled with the Court's advice to meet with the attorney's for self represented individuals. This amended complaint follows the advice provided and plaintiff has not had a chance to have them review this first amended complaint as it takes time to get an appointment.

## I. INTRODUCTION

6. Plaintiff Freedom Cheteni, individually and as the operator of The VR School, brings this action seeking prospective injunctive relief to redress for intentional and ongoing discrimination, violations of due process, and retaliation under the United States Constitution and federal law by individuals Defendants Malia Vella and Carrie Lopes, officials with the California Department of Education (CDE).

7. Defendants' discriminatory actions violate the American Rescue Plan ("ARP") Emergency Assistance for Non-Public Schools ("EANS"), a federal statute requiring Local Education Agencies like Plaintiff's to select one of four data sources under federal law to verify the poverty levels of their student beneficiaries under contracts he signed.

8. Plaintiff submitted scholarship and financial data for 180 students enrolled in Virtual Reality ("VR"), 11 in-person students with disabilities, and 80 students in a hybrid program through the VR California Virtual Campus in Santa Clara County, California.

9. Plaintiff provided scholarships to 180 students in the 2019–2020 school year, which the CDE describes as "innovative for leveraging Virtual Reality, Artificial Intelligence, and Blockchain technology" to provide vital resources to California's Children. The current EANS contracts support 402 students approved by the state.

10. Defendants sent Plaintiff several federal regulations, claiming authority under 34 C.F.R. §§ 75.700, 75.701, and 75.702 to perform a statutory audit "to ensure compliance with federal requirements." However, Defendants misapplied these regulations in a discriminatory and retaliatory manner under color of state law.

11. On November 18, 2023, the State Superintendent of Public Instruction determined the CDE's statutory authority to regulate and monitor The VR School's innovation as California's first AI and Blockchain-enabled Local Education Agency under state law, a

statutorily recognized ARP Act school by act of Congress, and a recipient of the federal grant with its founder, Plaintiff, as the statutory applicant who facilitated 402 statutorily eligible students enrolled in The VR School to earn a California High School Diploma and Associate Degrees as a result of the United States Congress's enactment of the ARP EANS to combat learning loss to the COVID-19 Federal Emergency.

12. Plaintiff Freedom Cheteni, as the founder of the world's first VR School and California's only VR School and School of AI—all federal and state statutory Nonpublic Schools—has standing in this Court to protect his constitutional rights and his business with a mission to create Leaders with a major impact.

**II. JURISDICTION AND VENUE**

13. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under federal law and involves claims of violations of Constitutional rights under 42 U.S.C. §§ 1981 and 1983.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in the Northern District of California, where Plaintiff resides and operates his corporation, The VR School.

15. Plaintiff has standing to bring this action because:
    **a**. *Injury in Fact:* Plaintiff has suffered concrete and particularized injuries that are actual and imminent. Specifically, Plaintiff has experienced financial harm due to the prospect of defendants wrongfully withholding $1,337,872.93 in critical payments to be paid to vendors on or before June 30, 2025, damage to his professional reputation, emotional distress, and impairment of his ability to operate The VR School and fulfill its mission as he will be personally responsible per contracts he signed.

    **b.***Causal Connection* : There is a direct causal relationship between Plaintiff's injuries and Defendants' actions. Defendants' discriminatory, retaliatory, and unlawful conduct directly led to the suspension and termination of EANS funding and services to The VR School, property interests without due process of law.

    **c.** *Redressability :* It is likely that a favorable decision by this Court will redress Plaintiff's injuries in the future. Granting the requested injunctive relief, declaratory judgment, and damages will restore wrongly withheld funding for services plaintiff received, rectify the discrimination, and prevent future unlawful actions by Defendants.

    **III. PARTIES**

16. Plaintiff Freedom Cheteni is an individual residing in California and the founder and

    operator of The VR School, a private educational institution located in Santa Clara County, California. Plaintiff has suffered personal harm as a result of Defendants' actions, impacting his financial livelihood and professional reputation. The VR School Utilizes innovative virtual reality and Artificial Intelligence technology to provide education to students, most of whom are from underserved and minority communities.

17. Defendant Malia Vella is the Deputy Superintendent at the California Department of Education. At all relevant times, she acted under color of state law in her capacity with the CDE and is sued in her individual capacity.

18. Defendant Carrie Lopes is the Director of EANS Federal Programs at the California Department of Education. At all relevant times, she acted under color of state law in her capacity with the CDE and is sued in her individual capacity.

### IV. APPLICABLE STATUTES AND LEGAL FRAMEWORK

**42 U.S.C. § 1981 – Equal Rights Under the Law**

19. Prohibits racial discrimination in the making and enforcing of contracts, guaranteeing that all persons within the United States have the same right to make and enforce contracts as enjoyed by white citizens.

20. Under § 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. See 42 U.S.C. § 1981(b).

21. A plaintiff bringing a claim under § 1981 must prove that:

    a. The plaintiff was a party to a contract or sought to enter into a contractual relationship.
    b. The plaintiff was prevented from making, performing, modifying, terminating, or enjoying the benefits of the contract because of the defendant's purposeful discrimination on the basis of race.
    c. The defendant acted with the intent to discriminate against the plaintiff based on race.

**42 U.S.C. § 1983 – Civil Action for Deprivation of Rights**

22. Allows individuals to sue state actors who, under color of state law, violate federal rights guaranteed by the Constitution and federal statutes, including rights under § 1981.

**Fifth Amendment – Takings Clause**

23. Prohibits the government from taking private property for public use without just compensation.

---

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, AND JURY DEMAND      4

**Fourteenth Amendment – Procedural Due Process and Equal Protection**

24. Guarantees that no state shall deprive any person of life, liberty, or property without due process of law, and ensures equal protection of the laws.

**General Education Provisions Act (GEPA), 20 U.S.C. § 1234 et seq.**

25. Establishes the framework for federal education programs, including provisions for administrative appeals and enforcement.

**34 C.F.R. §§ 75.700, 75.701, and 75.714 – Federal Regulations Governing EANS Funding**

26. Govern the use of funds from federal grants like EANS, requiring recipients to comply with applicable statutes, regulations, and approved applications.

**2 C.F.R. § 200.303 – Internal Controls**

27. Requires entities receiving federal funds to establish and maintain effective internal controls over federal awards, ensuring compliance with federal statutes and regulations.

**Ex parte Young Doctrine – Injunction Against State Officials**

28. Allows federal courts to grant injunctive relief against state officials who are violating federal law.

**V. FACTUAL ALLEGATIONS**

**A.    The VR School's Mission and Federal EANS Funding**

29. The VR School was founded with a mission to "declare missions, not majors," fostering students' desire to make an impact through immersive learning experiences in virtual reality and leveraging artificial intelligence in the delivery of instruction.

30. The school serves students from underserved and minority backgrounds, offering unique opportunities in STEM education, curriculum accredited by the University of California (UC-AG approved), California Community College Virtual Campus student life and mastery based learning based on Petitioners Movement Thinking Philosophy.

31. In January 2022, Petitioner applied for and received services from the CDE, funded through the federal EANS program under the ARP Act, which requires compliance with 34 C.F.R. § 75.700. Plaintiff's application was supported by scholarship and financial aid data for over 402 students and continues to.

32. A contractual relationship was established between Plaintiff and the CDE, involving approved contracts for EANS funding and services, including agreements with vendors and service providers. Those contracts are uncontested and enforceable.

**B.     Promises and Mismanagement by Defendants Lopes and Vella**

33. Between January 21, 2021, and November 2, 2021, defendants assured 547 approved EANS operators that the CDE would adhere to Congress's mandates and timelines, including guaranteeing civil rights protections under 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964) and right to due process hearings at the California Office of Administrative Hearings.

34. The CDE reimbursed $115,631 to Plaintiff for costs incurred for 82 Meta Quest VR Headsets he purchased in March 2020 with his own funds, pursuant to 34 C.F.R. § 75.707, which allows for pre-award costs.

35. The CDE authorized reimbursement of $834,102 for services provided by VR School EANS staff member Warren Lee from March 13, 2020, to June 30, 2025, aligning with 2 C.F.R. § 200.430, which governs compensation for personal services under federal awards.

36. Despite these assurances, Defendants imposed additional requirements on Plaintiff, violating the equal protection component of the Fourteenth Amendment and federal regulations ensuring nondiscrimination.

**C.     Discriminatory Treatment and Retaliation**

37. Defendants imposed stricter documentation requirements on Plaintiff, including unnecessary statutory audits not required of white-operated businesses, in violation of 42 U.S.C. § 1981.

38. On April 17, 2023, Defendant Lopes informed Plaintiff via email that the CDE was suspending The VR School's EANS services, falsely claiming failure to provide satisfactory fiscal documentation, without affording due process as required by the Fourteenth Amendment and 34 C.F.R. § 76.401.

39. The alleged statutory audit was a pretext to discriminate against Plaintiff, contravening 2 C.F.R. § 200.303, which requires fair and equitable treatment in compliance monitoring.

40. On May 17, 2023, Plaintiff filed a formal complaint of racial discrimination against Defendants, invoking protections under 42 U.S.C. § 1983.

41. Three days later, on May 20, 2023, Defendants terminated The VR School's EANS services, an act of retaliation violating Plaintiff's First Amendment rights and actionable under 42 U.S.C. § 1983.

42. *Injury in Fact:* The discriminatory audits, termination of services, and retaliatory actions caused financial strain, delayed reimbursements, damage to Plaintiff's Professional reputation, and emotional distress.

43. *Causal Connection:* These injuries are directly linked to Defendants' discriminatory and retaliatory practices.

44. *Redressability:* A favorable court decision will address these harms by halting discriminatory practices, restoring his future ability to contract for funding, and awarding Damages for future violations.

**D.    Violation of Procedural Due Process**

45. Defendants deprived Plaintiff of a constitutionally protected property interest in EANS funding without due process of law, in violation of the Fourteenth Amendment.

46. **Process Received to Date:**

    a. On April 17, 2023, Plaintiff received an email from Defendant Lopes stating that The VR School's EANS services were suspended due to alleged failure by Plaintiff to provide satisfactory enrollment documentation as required by Federal Law.

    b. Plaintiff was not provided with a copy of the statutory audit report or any specific Findings supporting the suspension of services for his 402 students.

    c. On May 20, 2023, Defendants terminated EANS services without prior notice, a hearing, or an opportunity to contest the allegations. They lied to the State and Federal Administrative Law Judges that it was only a Suspension pending the final ruling by an administrative law judge, a process guaranteed by the state of California to all operators.

    d. Plaintiff attempted to appeal the decision through the California Office of Administrative Hearings (OAH), but defendants disrupted the scheduled hearings and continue to obstruct Plaintiff's access to the established due process of law for Plaintiff and other school founders under the Federal program.

    e. The due process hearing was initially scheduled for January 8–12, 2024, but was vacated at Defendants' request, causing significant delay and further harm.

47. **Anecdote Supporting Lack of Due Process:**

- Communication with William McGee:

On June 26, 2023, Plaintiff communicated with William McGee, Director of the Student Achievement and Support Division at the CDE, regarding the appeal process. Despite Plaintiff's efforts to obtain clarity on the status of his appeal and the due process hearing, McGee's responses indicated ongoing delays and procedural inadequacies caused by Defendants. McGee was clear that CDE would provide prospective relief on receipt of a written final order from the Administrative Law Judge at the California Office of Administrative Hearings.

- Ruling by U.S. Department of Education Involving Secretary Cardona:

In a federal administrative appeal, when Defendants Lopes and Vella attempted once again to deprive Plaintiff of his due process rights, the U.S. Department of Education, Under Secretary Miguel Cardona, issued a ruling acknowledging Plaintiff's entitlement to Due process and an appeal process provided by CDE. Defendants obstructed and continue to abstract that process, denying him due process of law.

- Findings of Administrative Law Judge Julie Cox:

ALJ Julie Cox found that the statutory audit conducted by the State of California found Plaintiff in compliance, yet Defendants proceeded with the suspension without providing a pre- deprivation hearing.

- Subsequent California OAH Ruling by ALJ Michael Starkey:

ALJ Starkey reiterated that Plaintiff is entitled to a constitutional due process hearing, and that the contract between CDE and the Department of General Services explicitly gave Plaintiff that right.

48. **Anecdotes Demonstrating Contract Discrimination:**

- On March 15, 2024, Defendant Lopes wrote to Plaintiff:

"Dear Dr. Cheteni: It has come to the Department's attention that you recently attempted to request services/assistance with ELB Global under the American Rescue Plan Emergency Assistance to Non-public Schools (ARP EANS) program contract CDE approved. Please note that VR's EANS services (Coronavirus Response and Relief Supplemental Appropriations EANS (EANS I) and ARP EANS (EANS II)) remain suspended until a decision is made on your appeal. For this reason, I told the vendor not to fulfill the ELB Global contract signed by you. Any further attempts by you to utilize EANS services CDE approved in your contracts will therefore also necessarily be

rejected. I have told the you that my decision is also Malia Vella's decision and I will send a letter on March 29, 2024 before the PreTrial hearing at OAH."

- After the U.S. Secretary and ALJ made their rulings, Plaintiff requested that Defendant Lopes process prospective relief if the performance period was extended from September 30, 2024, to June 30, 2025. On June 3, 2024, Defendant Lopes responded:"I will reject and block any attempt for you to enforce your contracts, and Malia and I will enter a decision to terminate the provision of EANS services AGAIN to your school for the reasons set forth in the May 20, 2023, Decision Letter. Your Constitutional rights to a pre-deprivation hearing were denied, and you will be deprived of your so-called due process of law to protect your interests in the lawsuits against us. The decision Malia and I made on May 20, 2023, is final and not subject to appeal. We are CDE, and all your appeals mean nothing; we are just checking boxes. Forget about EVER getting your right to appeal, you will NOT get a Final written order in time. You brought this upon yourself, and you will be responsible for all the contracts CDE approved and that you signed, and you can't do anything about it."

**- Significance:**
These communications illustrate Defendants' intentional interference with Plaintiff's contractual rights and their discriminatory practices. Despite prior approval of contracts, defendants individually decided to halt processing, approaching vendors and telling them to destroy the contracts, specifically targeting Plaintiff. This conduct violates 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts.

49. **Inadequacy of the Process and Need for Injunctive Relief:**

    a. The existing Due process procedures failed to safeguard Plaintiff's due process rights, as they were manipulated by Defendants to delay and deny a fair hearing under color of state law.

    b. Future injunctive relief is necessary to compel Defendants to provide the required Constitutional procedural protections, including prompt notice, disclosure of evidence, and a fair hearing before an impartial tribunal before depriving him of his property rights.

    c. Injunctive relief would prevent Defendants from engaging in further actions that Obstruct due process, ensuring compliance with Constitutional requirements.

50. *Injury in Fact:* Plaintiff suffered the loss of property interests without due process, causing financial harm and undermining his legal rights under Federal Law.

51. *Causal Connection:* Defendants' failure to provide due process directly resulted in Plaintiff's injuries.

52. *Redressability:* Judicial relief can restore Plaintiff's rights in the future, compel proper Procedural protections, and compensate for losses incurred.

E. **Unconstitutional Taking Without Just Compensation**

53. Defendants' actions resulted in the taking of Plaintiff's property interests in EANS-funded equipment and services without just compensation, violating the Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment. Withholding payments for equipment he used his own funds and taking back the equipment is taken without just compensation. Funds wrongly withheld to reimburse Plaintiff entitle Plaintiff to keep the equipment for use by his students and for his business.

54. *Injury in Fact:* The deprivation of property without compensation caused economic harm to Plaintiff. CDE asked Plaintiff to use his own funds and submit reimbursement requests at the end of the performance period, June 30, 2025. Petitioner used his own funds on the promise of being reimbursed under EANS, that has not happened.

55. *Causal Connection:* The injuries are directly linked to Defendants' actions in terminating funding and seizing assets.

56. *Redressability:* A favorable ruling can provide just compensation and prevent future unconstitutional takings when the plaintiff requests the payment agent to process Payments. The payment agents are ready to process payment, but Defendants have told them not even though the state has sent them the funds to reimburse Petitioner.

F. **Harm to The VR School and Its Students**

57. As a result of Defendants' actions, The VR School, Plaintiff's property interest and private business suffered significant financial and operational harm. The abrupt suspension of EANS services disrupted contracts with vendors and jeopardized educational opportunities for predominantly minority students.

58. Vendors such as FACTS Education Solutions, Catapult Learning, ELB Global and InventXR were left without payments for services rendered, forcing Plaintiff to use personal resources to sustain operations if the injunction does not issue.

59. The loss of funding caused a cessation of critical educational programs, including the Use of virtual reality platforms essential to the students' learning experiences until payment is made. The state has already provided payment agents with funds to reimburse Plaintiff to pay for services his business received under EANS. Defendants are directly telling payment agents not to process the payments in their individual capacity in violation of the U.S. Constitution and Federal Law under Prompt Payment Act

in the EANS contract.

60. *Injury in Fact:* The VR school's mission and Plaintiff's ability to provide education were severely compromised and irreparable harm will occur if defendants are not enjoined.

61. *Causal Connection:* Defendants' unlawful actions directly caused these injuries.

62. *Redressability:* Court intervention can restore funding when payment agents are no longer improperly withholding reimbursing Plaintiff's vendors due to defendants individual actions and enable the resumption of educational services. Director McGee has already asked Petitioner to sign contracts with vendors to reimburse him as soon as an injunction is granted.

G. **Court Findings**

63. The Court, in its order granting the reopening of this case, noted several key facts establishing Plaintiff's standing. Plaintiff has a concrete and particularized injury due to the denial of EANS funds through contracting and asked him to amend the complaint and seek assistance from the Pro Se attorneys in the Court.

64. The harm is directly traceable to Defendants' actions, who withheld payments without Justification and who will withhold the same payments in the future. The injury is redressable by a favorable decision from this Court because Plaintiff requests prospective relief.

65. The Court recognized that Plaintiff exhausted all administrative remedies, including multiple appeals and formal complaints, which were ignored or improperly dismissed by Defendants. There is no adequate remedy at law for prospective relief.

**VI. CLAIMS FOR RELIEF**

**COUNT I**
Racial Discrimination in Making and Enforcing Contracts
(42 U.S.C. § 1981 via 42 U.S.C. § 1983)

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Legal Framework:

    Under 42 U.S.C. § 1981, all persons have the right to make and enforce contracts regardless of race. This includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the

Contractual relationship. Defendants, acting under color of state law, are liable under 42 U.S.C. § 1983 for violations of § 1981.

To prevail on this claim, Plaintiff must prove:

a. Plaintiff was a party to a contract or attempted to enter into a contractual relationship.

b. Plaintiff was prevented from making, performing, modifying, terminating, or enjoying the benefits of the contract because of Defendants' purposeful discrimination on the basis of race.

c. Defendants acted with the intent to discriminate against Plaintiff based on race.

68. Facts Supporting the Claim:

a. Plaintiff was a party to contracts approved by the CDE under the EANS program, including agreements with payment agents like FACTS-NELNET and ELB Global.

b. Defendants prevented Plaintiff from performing and enjoying the benefits of these contracts by suspending and terminating EANS funding and services without valid Justification and under color of state law.

c. Defendants imposed unnecessary and burdensome documentation requirements on plaintiff, not applied to similarly situated white-operated schools and prohibited by Federal law.

d. Defendants explicitly stated their intent to **"reject and block any attempt"** by Plaintiff To enforce his contracts, demonstrating purposeful discrimination.

e. Defendants' actions were motivated by racial animus, as evidenced by disparate treatment and their own statements.

69. Injury:

Plaintiff suffered financial losses, impairment of contractual relationships, and was Deprived of the benefits and privileges of his contractual agreements due to Defendants' discriminatory actions.

70. Relief Sought:

Plaintiff seeks prospective compensatory damages, punitive damages, and injunctive relief to prevent further violations of his rights under 42 U.S.C. § 1981.

**COUNT II**
Violation of Procedural Due Process
*(Fourteenth Amendment via 42 U.S.C. § 1983)*

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Legal Framework:

    To state a procedural due process claim, Plaintiff must allege (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998).

73. Facts Supporting the Claim:

    a. Deprivation of Property Interest: Plaintiff had a constitutionally protected property interest in the EANS funding and related contracts, as established by statutory entitlements and approved agreements.

    b. Denial of Adequate Procedural Protections:

    i. Defendants suspended and terminated EANS services without providing specific notice of the reasons or evidence against Plaintiff.

    ii. Defendants failed to furnish the audit report that was the basis for the termination, depriving Plaintiff of the opportunity to review and challenge the findings.

    iii. The post-deprivation process through the California Office of Administrative Hearings was obstructed by Defendants' ex parte communications and requests to vacate scheduled hearings, causing undue delays for payment agents to process reimbursements.

    iv. Communications with William McGee, rulings involving Secretary Cardona, and determinations by Chief Administrative Law Judge Elizabeth Figueroa demonstrated procedural inadequacies and lack of timely action on Plaintiff's appeal caused by defendants. The ALJ found defendants not credible.

    v. Administrative Law Judge Julie Cox's findings revealed that the audit conducted by the State of California found Plaintiff in compliance in the PreTrial hearing, yet Defendants proceeded with the suspension without providing a pre-deprivation hearing.

    vi. The subsequent California OAH ruling by ALJ Michael Starkey reiterated Plaintiff's

    entitlement to a Constitutional due process hearing under the 14th Amendment, further emphasizing Defendants' failure to comply.

    vii. Defendant Lopes's statements on March 15, 2024, and June 3, 2024, explicitly indicated an intent to deny Plaintiff's due process rights and obstruct his ability to enforce contracts if the U.S. Department of Education extended the EANS contracts to June 30, 2025.

74. Injury:

    Plaintiff suffered the loss of property and denial of federal legal rights without due Process, resulting in financial harm and emotional distress.

75. Relief Sought:

    Plaintiff seeks declaratory relief, compensatory damages, and injunctive relief to restore his rights and prevent future violations.

**COUNT III**
Retaliation for Exercise of First Amendment Rights
*(First and Fourteenth Amendments via 42 U.S.C. § 1983)*

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77. Legal Framework:

    The First Amendment protects the right to petition the government for redress of Grievances. Retaliation against an individual for exercising this right violates the First Amendment, applicable to the states through the Fourteenth Amendment. Defendants are liable under 42 U.S.C. § 1983.

78. Facts Supporting the Claim:

    a. Plaintiff engaged in protected activity by filing a formal complaint of racial discrimination against Defendants on May 17, 2023.

    b. Defendants retaliated by terminating EANS services on May 20, 2023, just three days after the complaint was filed. Further, defendants ordered Plaintiff to destroy recordings of their conversations admitting to these allegations and threatening to send him to Alameda Superior Court for disobeying their orders if I did not destroy videos of their actions.

c. Defendant Lopes's statements on March 15, 2024, and June 3, 2024, further indicate retaliatory intent, expressing a determination to obstruct Plaintiff's rights and appeals and sending him to state court for contempt if he did not destroy videos of her admitting to discriminating before the ALJ.

79. Injury:

    Plaintiff suffered financial harm, emotional distress, and a chilling effect on his constitutional rights.

80. Relief Sought:

    Plaintiff seeks compensatory damages, punitive damages, and injunctive relief to deter future retaliation when he exercises his Constitutional rights under Federal Law.

**COUNT IV**
Unconstitutional Taking Without Just Compensation
*(Fifth and Fourteenth Amendments via 42 U.S.C. § 1983)*

81. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

82. Legal Framework:

    The Fifth Amendment prohibits the taking of private property for public use without just compensation, applicable to the states through the Fourteenth Amendment. Defendants Are liable under 42 U.S.C. § 1983 for unconstitutional takings.

83. Facts Supporting the Claim:

    a. Plaintiff had property interests in EANS-funded equipment and services, including contracts with vendors and educational materials which are already reimbursed to the payment agents. Defendants are stopping the payment agents from processing reimbursements already outside the state treasury for services Plaintiff must reimburse vendors.

    b. Defendants' termination of funding and seizure of assets effectively took Plaintiff's property for public purposes without providing just compensation.

    c. Defendants utilized the property or reallocated the funds to reimburse Plaintiff for other uses without compensating Plaintiff.

84. Injury:

---

       Plaintiff suffered economic losses due to the uncompensated taking of his property Interests and payment agents are ready to process reimbursements as soon as an injunction issues or a final order by an ALJ is entered.

85.    Relief Sought:

       Plaintiff seeks just compensation for the property taken and injunctive relief to prevent future unconstitutional takings. Prospective relief includes enjoining defendants from improperly threatening payment agents to reimburse Plaintiff for funds Congress has already paid to reimburse Plaintiff and his vendors under approved contracts.

**COUNT V**
Violation of Equal Protection
*(Fourteenth Amendment via 42 U.S.C. § 1983)*

86.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

87.    Legal Framework:

       The Equal Protection Clause of the Fourteenth Amendment requires that no state shall Deny any person within its jurisdiction the equal protection of the laws. Defendants are Liable under 42 U.S.C. § 1983 for violations of equal protection rights.

88.    Facts Supporting the Claim:

       a. Defendants intentionally subjected Plaintiff to disparate treatment based on race.

       b. Similarly situated white-operated schools and their operators were not subjected to the same burdensome requirements, audits, or termination of services or delaying reimbursements from payment agents like FACTS-NELNET and ELB Global who have both mentioned defendants as having given orders not to process payments already given to them by the Federal Government to reimburse Plaintiff for services rendered by vendors under contracts.

       c. Defendants' actions were motivated by discriminatory intent, as evidenced by their differential treatment and refusal to provide equal support.

89.    Injury:

       Plaintiff suffered financial and reputational harm due to unequal treatment and an

injunction will help restore reputation to the vendors who have not been paid when funds are already at the Payment agents disposal to process.

90. Relief Sought:

    Plaintiff seeks declaratory relief, compensatory damages, and injunctive relief to enforce his equal protection rights to work with payment agents to process payments for him to pay vendors who have provided services under EANS contract.

**COUNT VI**
Violation of Title VI of the Civil Rights Act of 1964
*(42 U.S.C. § 2000d)*

91. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

92. Legal Framework:

    Title VI prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving federal financial assistance.

93. Facts Supporting the Claim:

    a. Defendants, as officials of an agency receiving federal funds, discriminated against Plaintiff by denying benefits and subjecting him to unequal treatment based on race.

    b. The CDE receives federal financial assistance for the EANS program.

    c. Defendants' discriminatory actions violate Title VI's prohibition against racial Discrimination.

94. Injury: Plaintiff was denied federally funded benefits and services due to discrimination.

95. Relief Sought:

    Plaintiff seeks injunctive relief to enforce compliance with Title VI and compensatory damages for the harm suffered and for defendants to be enjoined from unlawfully telling payment agents not to reimburse Plaintiff's vendors for services already provided under EANS without due process of law.

    **VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Declare that Defendants' actions violated Plaintiff's rights under the United States Constitution and federal law and are enjoined from doing so in the future;

B.  Enter preliminary and permanent injunctions enjoining Defendants from engaging in the unlawful practices described herein and requiring them to provide all due Reimbursements and services received by Plaintiff and not wrongfully withhold those payments in the future;

C.  Award Plaintiff compensatory damages in an amount to be determined at trial for the economic, emotional, and reputational harm suffered;

D.  Award punitive damages against Defendants for their willful and malicious conduct including improperly telling payment agents from not processing payments for services Plaintiff already received;

E.  Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Other applicable laws;

F.  Grant any other relief that the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: 10/10/2024
Respectfully submitted,
/s/ Freedom Cheteni

_____

Freedom Cheteni, Plaintiff, Pro Se
531 Lasuen Mall #19492
Stanford, CA 94305
(650) 656 0483
freedom@thevrschool.org