UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM CHETENI,<br><br>            Plaintiff,<br><br>    v.<br><br>MALIA VELLA, et al.,<br><br>            Defendants. | Case No.  23-cv-06286-SI<br><br>**ORDER RE: PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, JOINDER, SEALING DOCUMENTS, STRIKING PORTIONS OF DEFENDANTS' BRIEFING, AND A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 35, 37, 39, 45, 46, 49 |

Plaintiff Freedom Cheteni has filed numerous motions with the Court, including a motion for partial summary judgment (Dkt. Nos. 35 and 39), an application for a temporary restraining order (Dkt. No. 37), a motion to join a new defendant (Dkt. No. 45), a motion to seal certain filings (Dkt. No. 49), and a motion to strike references in defendants' briefing (Dkt. No. 46).  Pursuant to Civil Local Rule 7-1(b), the Court determined that the motions are suitable for resolution without oral argument, and has VACATED the scheduled January 3, 2025 hearing.  For the reasons stated below, the Court DENIES all of the motions except the motion to seal, which it GRANTS.

## BACKGROUND

While this litigation has not progressed far, plaintiff filed a motion for partial summary judgment.  In this procedural posture, the Court may consider evidence outside of the plaintiff's pleadings.  The following summary relies on sworn declarations submitted by the parties.

### I.    Factual Background

Plaintiff Freedom Cheteni operates The VR School, a private school in Santa Clara County,

California.  Dkt. No. 16 ("First Amended Complaint (FAC)") ¶ 16.  The VR School applied for and received allocations of funding or services under two different federal relief programs passed during the Covid-19 pandemic, the Coronavirus Response and Relief Supplemental Appropriations (CRRSA) Act of 2020 and the American Rescue Plan (ARP) Act of 2021.  Dkt. No. 1,[1] Cheteni Decl. ¶ 8.  Both acts provided funding for the Emergency Assistance to Non-Public[2] Schools (EANS) program to be distributed by the states.  CRRSA EANS I funds could be used to reimburse private schools directly for allowable expenses.  CRSSA, Pub. L. No. 116-260, § 312(d)(4)(M), 134 Stat. 1928 (2020).  However, Congress prohibited states from directly reimbursing non-public schools with ARP EANS II funds.  ARP, Pub. L. No. 117-2, § 2002(b), 135 Stat. 23 (2021).

A unit led by defendant Carrie Lopes within the California Department of Education (CDE) administered the two rounds of EANS funding.  Dkt. No. 54 ("Lopes Decl.") ¶¶ 4-5.  Congress required that schools applying for EANS funds submit low-income student enrollment data and that state educational agencies prioritize schools serving low-income populations.  CRRSA, § 312(d)(3)(B)(i), (d)(3)(C), 134 Stat. 1927.  The CDE allowed applicant schools to certify their 2019-20 low-income enrollment in several different ways.  Lopes Decl. ¶ 7.  The application also clearly stated that CDE had a right to audit applicant records for compliance with eligibility requirements.  *Id.* ¶ 9.  Applicants were required to certify that the information they provided was correct, under penalty of perjury.  *Id.* ¶ 10.

The VR School applied for CRRSA EANS I funds and stated in its application that it enrolled 82 low-income students.  Lopes Decl. ¶ 11.  Plaintiff certified the application.[3]  *Id.*  CDE approved the application and The VR School received direct reimbursements in the amount of $115,631 for expenditures reported in 2021.  Lopes Decl. ¶ 12; Cheteni Decl. ¶ 8.

---

[1] Docket Number 1 consists of two parts, the original petition and a supporting declaration.  The Court recognizes that the original petition is no longer the operative complaint, but still references the declaration, which was signed by plaintiff under penalty of perjury.

[2] Federal terminology uses "non-public" instead of "private" schools.

[3] An unsigned certification with plaintiff's name is attached as Exhibit D to the Lopes Declaration.  Lopes notes, "This unsigned copy was the only one available I could recover at this time.  However, it was signed as CRSSA EANS would not have been approved without a signature."  Lopes Decl. ¶ 11 n.1.

United States District Court
Northern District of California

To receive ARP EANS II funding, the CDE also required applicants to submit low-income enrollment figures based on the 2019-20 school year.[4]  Lopes Decl. ¶ 14, Ex. E.  Like the EANS I application, the EANS II application required applicants to retain records for five years in the case of a compliance audit.  *Id.*  The VR School applied for EANS II benefits and stated in its application that it enrolled 180 students, all low-income.  *Id.* ¶ 15.  Plaintiff once again certified the application.  *Id.*, Ex. G.  The CDE originally allocated $832,102 in EANS II funds for services and assistance to The VR School, starting in August 2022.  Lopes Decl. ¶ 16; Cheteni Decl. ¶ 8; Dkt. No. 53 ("Vella Decl."), Ex. C at 5.

The process for delivering and paying for services under EANS II was not straightforward.  The CDE designated ten approved vendors that private schools could work with to obtain services.  Lopes Decl. ¶ 16.    Schools would identify a service, the vendor would write a purchase order and submit it to the CDE, and the CDE would notify the vendor whether funds were available to pay for the service at that school.  *Id.*  After the school received the service, the vendor would submit an invoice that had been approved by the school to the CDE for reimbursement.  *Id.*  The CDE paid the vendor.  *Id.*  If the vendor used a contractor, the vendor was responsible for paying the contractor.  *Id.*  Payments never went directly to the school under EANS II and the CDE had no direct relationships with a vendor's contractors.  *Id.*

The parties present different narratives of subsequent events.  According to the defendants, Jackie Degel, an employee of EANS vendor FACTS Education Solutions, alerted Lopes on November 9, 2022 about a potential conflict of interest concerning EANS II payments in support of The VR School.  Lopes Decl. ¶ 18, Ex. H.  InventXR, a contractor that would be paid with EANS funds to provide equipment and services to The VR School, had the same address as The VR School.  *Id.*, Ex. H.  FACTS saw plaintiff named online as CEO of InventXR and told the CDE that "it appears that the school is paying itself."  *Id.*  However, plaintiff told Degel on follow-up questioning

---

[4] Plaintiff alleges that "[b]etween May 3 and August 11, 2022, CDE reiterated to all Nonpublic Schools in writing and webinars they could use 2021-2022 enrollment counts . . ." Cheteni Decl. ¶ 34.

that he was only a consultant for InventXR.[5]  *Id.*  According to Degel, plaintiff stated he would not benefit from The VR School's purchase of services from InventXR.  *Id.*

Nonetheless, in light of this discovery, Lopes looked more closely at The VR School's low-income student enrollment numbers for the 2019-20 school year and noticed discrepancies.  Lopes Decl. ¶ 19.  In the school's applications for the first and second round of EANS funding, the school claimed it had enrolled 82 and 180 low-income students, respectively.  *Id.*  Yet the school's enrollment affidavits filed with the state pursuant to California Education Code section 33190 listed its total enrollment in 2019-20 as eleven students.  *Id.*

With defendant Malia Vella's authorization,[6] the CDE then began a review of The VR School's eligibility.  The CDE did not budget for routine monitoring of EANS recipients, so Lopes' unit had to first obtain permission to finance the review from its own budget.  Lopes Decl. ¶ 20; Dkt. No. 52 ("Woodcheke Decl.") ¶ 7.  The monitoring team requested records from plaintiff prior to their first meeting with him, but the records provided were insufficient or nonresponsive.  Woodcheke Decl. ¶¶ 10-11.  The team met with plaintiff on March 13, 2023 and requested further documentation.  *Id.* ¶¶ 12-13.  Plaintiff responded by sending a list of email addresses belonging to students and staff, without differentiating between the two or providing any income verification.  *Id.* ¶ 13.  The monitoring team again requested that plaintiff provide documentation that supported the certifications plaintiff made in The VR School's applications for EANS funding, giving a deadline of April 7, 2023.  *Id.* ¶ 14.  Plaintiff did not provide additional documentation.  *Id.* ¶ 17.

The review concluded "that VR did not maintain sufficient documentation to support the claimed low-income student enrollment numbers or any documentation to substantiate that the amounts claimed and reimbursed under CRSSA EANS were expended for allowable services or costs."  Vella Decl. ¶ 7.  CDE staff recommended suspending funding for services to The VR School until its low-income enrollment numbers could be verified.  *Id.* ¶ 8.  CDE informed The VR School via email of its funding suspension on April 17, 2023.  *Id.*  At a final meeting on April 25, 2023,

---

[5] The Court notes that the certification cover sheets for both of The VR School's EANS applications list plaintiff's email address as freedom@inventxr.com.  Lopes Decl., Exs. D, G.
[6] Vella was the Deputy Superintendent with oversight of the EANS program.  Vella Decl. ¶ 3.

CDE staff explained to plaintiff how his submissions had been insufficient.  Woodcheke Decl. ¶ 21, Ex. H.

The CDE's formal report was completed on or around May 18, 2023.  Vella Decl. ¶ 9, Ex. B.  Two days later, on May 20, 2023, Vella made the decision to formally suspend services and assistance to The VR School.  *Id.* ¶ 9.  The CDE provided plaintiff formal notice in a seven-page letter that explained its decision in detail.  *Id.,* Ex. C.  Before the suspension of funding on April 17, 2023, CDE had provided $324,846 in EANS II funding for services for The VR School, including the $200,000 payment to InventXR.  Lopes Decl. ¶ 18.

For his part, plaintiff considered the $832,102 allocation to The VR School to be final and binding and proceeded with the hiring of two staff using EANS II funds.  Cheteni Decl. ¶¶ 28-30.  In the FAC, plaintiff asserts, "A contractual relationship was established between Plaintiff and the CDE, involving approved contracts for EANS funding and services, including agreements with vendors and service providers.  Those contracts are uncontested and enforceable."  FAC ¶ 32.

At several points in the declaration submitted with his original petition,[7] plaintiff alleges that CDE treated non-public schools operated by white individuals differently from those operated by Black individuals, including in documentation requirements.  Cheteni Decl. ¶¶ 22-23, 100, 113-119.  Specifically, plaintiff alleges that state officials required less documentation to establish eligibility from white-operated non-public schools than it did from The VR School. *Id.* ¶¶ 113-119.  Plaintiff "filed unaddressed discrimination complaints over 9 months."  *Id.* ¶ 60.  Plaintiff alleges that Lopes "admitted discriminating against me and my school."  *Id.*  Plaintiff further alleges Lopes made discriminatory statements about a potential African American staff hire.  *Id.* ¶ 64.  And plaintiff alleges that FACTS employee Jackie Degel informed him that CDE "wanted to exhaust me through unnecessary auditing" and had concluded that CDE "aimed to use a sham audit to breach contracts and remove me altogether."  *Id.* ¶ 90.  Plaintiff filed a formal discrimination complaint with CDE on May 17, 2023, three days before The VR School's services were officially suspended.  *Id.* ¶¶ 102-103.  Plaintiff alleges, "CDE was explicit that filing my appeal would cause CDE to

---

[7] Plaintiff did not submit a new declaration with the FAC.

unlawfully suspend all $1,337,872.93 in payments." *Id.* ¶ 109.

In her declaration, Lopes "strongly den[ies]" making any racist or derogatory statements or taking any discriminatory actions against plaintiff. Lopes Decl. ¶ 24. She contends plaintiff only started making allegations of discrimination after The VR School's EANS assistance was suspended. *Id.* Plaintiff's reply brief on the motion for summary judgment restates that Lopes admitted to discriminating against him but provides no additional evidence in support of this assertion. Dkt. No. 47 at 3.

On December 14, 2023, plaintiff sent an email to CDE officials stating that The VR School had "diligently gathered" 2019-20 student enrollment data. Dkt. No. 14-19. Plaintiff explained, "This exhaustive process, involving over 4,200 man-hours since its initiation on January 9th, 2023, was undertaken with the assistance of technical and legal experts to ensure the meticulous and comprehensive collation of personally identifiable information (PII) for every student and family enrolled during the specified period (FY 2019-20)." *Id.*

On September 30, 2024, funding opportunities under the EANS program expired. Lopes Decl. ¶ 13 n.2.

## II.    Procedural Background

Plaintiff first filed a 62-page petition for a writ of mandamus in this Court on December 5, 2023. Dkt. No. 1. The petition listed as defendants the California Department of Education and two of its employees—Malia Vella and Carrie Lopes—in their official capacities. *Id.* On January 29, 2024, the Court dismissed the case without prejudice because the petition was filed on behalf of The VR School, which was not represented by counsel. Dkt. No. 9. Six months later, plaintiff filed a motion to reopen the case. Dkt. No. 11. At the request of the Court, plaintiff clarified that he wanted to continue the litigation on his own behalf, not on behalf of The VR School. Dkt. No. 14. The Court granted plaintiff's application for in forma pauperis status and screened his original complaint for minimum legal viability pursuant to 28 U.S.C. § 1915(e)(2)(B). Dkt. No. 15. On September 20, 2024, the Court dismissed all claims against the CDE, but determined that plaintiff outlined a claim for discrimination in contracting against the individual defendants for which he

United States District Court
Northern District of California

United States District Court
Northern District of California

1    could pursue prospective injunctive relief.  *Id.*  The Court found plaintiff's procedural due process

2    and unlawful taking claims lacking clarity so the Court granted plaintiff leave to amend his

3    complaint.  *Id.*

4        Plaintiff filed the FAC on October 10, 2024, dropping the CDE as a defendant and listing

5    defendants Vella and Lopes as defendants in their individual capacities.[8]  FAC.  The FAC asserted

6    six causes of action: (1) racial discrimination in making and enforcing contracts (42 U.S.C. § 1981);

7    (2) violation of procedural due process (Fourteenth Amendment); (3) retaliation for exercise of First

8    Amendment rights (First and Fourteenth Amendments); (4) unconstitutional taking without just

9    compensation (Fifth and Fourteenth Amendments); (5) violation of equal protection (Fourteenth

10   Amendment); and (6) violation of Title VI of the Civil Rights Act of 1964, prohibiting

11   discrimination in programs and activities receiving federal financial assistance (42 U.S.C. § 2000d).

12   *Id.* at 11-17.  Defendants answered on November 19, 2024.  Dkt. No. 34.  The next day, plaintiff

13   filed a motion for partial summary judgment with an improperly short briefing schedule.  Dkt. No.

14   35.  Two days after that, plaintiff filed an ex parte application for a temporary restraining order,

15   seeking a mandatory injunction to restore The VR School's access to EANS funding.  Dkt. No. 37.

16   The Court set a briefing schedule for the ex parte application.  Dkt. No. 38.  On November 25, 2024,

17   plaintiff refiled his motion for partial summary judgment with a corrected briefing schedule and

18   hearing date.  Dkt. No. 39.  Plaintiff also filed a motion seeking to join FACTS as a defendant (Dkt.

19   No. 45) and an emergency motion to seal a screenshot of a website that contained plaintiff's

20   birthday, attached as an exhibit to multiple declarations submitted by defendants (Dkt. No. 49).  The

21   Court sealed the documents and counsel for defendants promptly responded apologetically and re-

22   filed redacted versions of the exhibits.  Dkt. Nos. 50-54.

23       Plaintiff's numerous filings show he has also pursued relief for this matter in several other

24   venues, including the California Office of Administrative Hearings, the federal Department of

25   Education, the Ninth Circuit, and California Superior Court.  Dkt. No. 2 at 4; Dkt. No. 13 at 4; Dkt.

26   No. 14-10.

27

28       [8] On December 12, 2024, plaintiff filed a notice with the Court attempting to clarify that he
     was suing the individual defendants in their official and individual capacities.  Dkt. No. 43.

**LEGAL STANDARD**

**I.    Summary Judgment**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  *Id.*  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(c)).

**II.    Application for Temporary Restraining Order**

Rule 65(b) of the Federal Rules of Civil Procedure permits a court to issue a temporary

United States District Court
Northern District of California

restraining order without notice to the adverse party only where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . . ." Fed. R. Civ. P. 65(b)(1)(A). The movant's attorney must certify in writing "any attempts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). These requirements "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438-39 (1974).

The standards for issuing a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Like a preliminary injunction, a temporary restraining order may only issue if the movant establishes (1) a likelihood of success on the merits, (2) a likelihood that the movant will suffer irreparable harm in the absence of relief, (3) that the balance of equities tips in the movant's favor, and (4) that a restraining order is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has noted that "very few circumstances justify[] the issuance of an ex parte TRO." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

## DISCUSSION

## I. Summary Judgment

Plaintiff does not meet his burden for summary judgment on any of his claims. The Court considers each claim independently below.

### A. Racial Discrimination in Contracting

To state a claim for discrimination in contracting under Section 1981, a plaintiff must show: "(1) it is a member of a protected class, (2) it attempted to contract for certain services, and (3) it was denied the right to contract for those services." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). Further, a plaintiff must likely show that a similarly-situated person

1    who was not a member of the plaintiff's protected class received services denied to the plaintiff.

2    *See id.*[9]   Once a plaintiff meets this initial threshold, the defendant may prove "a legitimate non-

3    discriminatory reason" for its action. *Id.* at 1144.

4         Plaintiff's claim fails on summary judgment for two reasons.  First, plaintiff has not shown

5    an absence of disputed material facts.  Defendant Lopes denies all of the discriminatory actions

6    plaintiff alleges against her.  Lopes Decl. ¶ 24.  Defendants have also presented a legitimate non-

7    discriminatory reason for its action—plaintiff's alleged failure to support The VR School's

8    application with proper documentation.  Plaintiff has not presented undisputed evidence to show

9    this action was pretextual.

10        More significantly, plaintiff is not the proper party to bring a discrimination in contracting

11   claim when the party on the contract was The VR School.  "Section 1981 plaintiffs must identify

12   injuries flowing from a racially motivated breach of their own contractual relationship, not of

13   someone else's." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006).  In *Domino's Pizza*,

14   the plaintiff was the sole shareholder of a company that entered into a construction contract with

15   Domino's. *Id.* at 472-73.  The Supreme Court rejected the plaintiff's claim for racial discrimination,

16   brought in his personal capacity, because the plaintiff himself did not have any rights under that

17   contract. *Id.* at 476, 480.  The same is true here.  The VR School is the proper party to assert a claim

18   in discriminatory contracting; plaintiff's individual claim cannot succeed as a matter of law.[10]

19

20        **B.    Violation of Procedural Due Process**

21        "A procedural due process claim has two distinct elements: (1) a deprivation of a

22   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

23   protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

24

---

25        [9] Noting different approaches taken in other circuits, the Ninth Circuit in *Lindsey* declined

26   to adopt the exact contours of this fourth requirement.  *Lindsey*, 447 F.3d at 1145.

27        [10] Defendants contend plaintiff lacks standing.  For a section 1981 discrimination claim,

28   "Whether a plaintiff possesses legally enforceable rights under a contract is a question on the merits
     rather than a question of constitutional standing." *Lindsey v. Starwood Hotels & Resorts Worldwide
     Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010).

United States District Court
Northern District of California

1998).  Plaintiff has not established either element with undisputed facts.  Plaintiff has alleged a deprivation of continued assistance under his EANS II allocation, but defendants assert that they ceased funding services to The VR School because it could not prove compliance with the enrollment criteria necessary to receive funding in the first place.  If that were true, plaintiff would have no protected interest in the funding allocation.  As noted above, defendants also argue that plaintiff is not the real party in interest.  Regardless, under the current evidence before the Court, plaintiff cannot show that defendants deprived him of adequate procedural protections.  Through the review process, defendants provided plaintiff numerous opportunities to prove eligibility under the EANS program and only suspended The VR School's funding after repeated failures to do so.  See Woodcheke Decl. ¶¶ 12-17.  Plaintiff has not established that he was deprived of "[t]he fundamental requirement of due process": "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

### C.    Retaliation for Exercise of First Amendment Rights

To successfully assert a First Amendment retaliation claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and citation omitted).  The plaintiff must show "that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Id.* at 399 (citation omitted).  Plaintiff has not put forward undisputed facts showing that The VR School would have continued to receive EANS-funded services but for defendants' alleged retaliatory motive.   Plaintiff filed his formal discrimination complaint one month after first being informed the CDE was suspending services to The VR School.   Cheteni Decl. ¶¶ 102-103.   While plaintiff alleges filing "unaddressed discrimination complaints over 9 months," it is not clear from his declaration when this 9-month period began.  *See id.* ¶ 60.  Moreover, plaintiff has not established retaliation was the sole motivating factor behind the decision to terminate EANS services for The VR School.  Defendants have put forward evidence suggesting that The VR School's eligibility status was revoked because

11

plaintiff failed to provide documentation to support the school's enrollment claims.

### D.    Unconstitutional Taking Without Just Compensation

The Fifth Amendment to the U.S. Constitution prohibits the government from taking private property "for public use, without paying just compensation."  U.S. Const. amend. V.  In screening plaintiff's initial complaint, the Court found plaintiff's unconstitutional taking claim lacking in clarity but granted plaintiff leave to amend.  *See* Dkt. No. 15 at 7-8.  The FAC alleges that plaintiff "used his own funds on the promise of being reimbursed under EANS, that has not happened."  FAC ¶ 54.  These allegations resemble a breach of contract claim, but do not support a claim under the takings clause.  *See El Dorado Cmty. Serv. Ctr. v. Cnty. of Los Angeles*, 730 F. App'x 407 (9th Cir. 2018).  Plaintiff has not stated a claim here, let alone put forward undisputed evidence sufficient to survive summary judgment.

### E.    Violation of Equal Protection

"The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose. [Citation.] A plaintiff may establish discriminatory purpose by '"produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely tha[n] not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way.' [Citation.]" *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).  As stated above, plaintiff has not established an absence of disputed facts that plaintiff was subject to discriminatory treatment.  Plaintiff notes that other white-operated private schools were not subject to similar audit or documentation requirements.  Cheteni Decl. ¶¶113-119.  However, defendants submit that the review of The VR School arose in response to a specific concern and that there was no budgetary authority for general auditing of EANS recipients.  Lopes Decl. ¶¶ 19-20. Under the evidence before the Court, plaintiff has not established as a matter of law that it is "more likely than not" that defendants were motivated by a discriminatory reason.  *See Ballou*, 29 F.4th at 422.

United States District Court
Northern District of California

### F.        Violation of Title VI of the Civil Rights Act of 1964

Federal law prohibits discrimination in programs and activities receiving federal financial assistance.  42 U.S.C. § 2000d.  "To prevail on a Title VI claim, however, a plaintiff must prove (1) that he is an intended beneficiary of the federally-funded program the defendants . . . participated in, and (2) that the defendant intentionally discriminated against him in violation of the statute . . . ." *Epileptic Found. v. City & Cnty. of Maui*, 300 F. Supp. 2d 1003, 1011 (D. Haw. 2003) (internal quotation marks and citations omitted).  If plaintiff cannot prove with sufficient documentation that The VR School enrolled a significant population of low-income students, it would not be an intended beneficiary of EANS II services.  Further, as discussed above, plaintiff has not established by undisputed fact that plaintiffs intentionally discriminated against him.  This claim likewise fails at the summary judgment stage.

## II.        Application for a Temporary Restraining Order

Plaintiff filed an application for a temporary restraining order on November 22, 2024.  Dkt. No. 37.  Plaintiff requested that the Court restrain defendants from interfering with plaintiff's "valid vendor contracts" and from disseminating "further defamatory statements or communications regarding The VR School's eligibility for ARP EANS funding."  *Id.* at 2.  Plaintiff also requested that the Court compel defendants to pay plaintiff and schedule a hearing for a preliminary injunction. *Id.*

The Court denies plaintiff's motion for a restraining order and a mandatory injunction because plaintiff cannot meet the first *Winter* factor—a likelihood of success on the merits.  *See Winter*, 555 U.S. at 20.  Plaintiff has not presented sufficient evidence at this stage to persuade the Court that defendants have acted improperly in this matter.  Defendants have put forward testimony under oath describing the non-discriminatory reasons behind their decision to suspend funding for services to The VR School.  Plaintiff has not refuted defendants' declarations with any admissible evidence, nor shown defendants' explanations to be pretextual.  The alleged defamatory statements by defendants appear to be their communications to vendors about the CDE's determination of The VR School's ineligibility for EANS funding, a true statement at the time it was delivered.  Dkt. No.

35 at 12.

Moreover, what seems to be plaintiff's core requested relief—a mandatory injunction that compels defendants to release funds for plaintiff's school—faces an even higher burden that plaintiff does not meet. Since mandatory injunctions seek to alter rather than preserve the status quo, a party seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). At this stage of the litigation, the law and facts do not clearly favor plaintiff.

## III.    Plaintiff's Other Motions

### A.    Motion to Strike

Plaintiff filed a motion to strike the portions of defendants' opposition brief at Docket Number 40 that refer to The VR School as the "real party in interest." Dkt. No. 46. Rule 12(f) of the Federal Rules of Civil Procedure allows a court to strike any "redundant, immaterial, impertinent, or scandalous matter." "'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . .'" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).

Defendant's arguments about the real party in interest are not "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. Pro. 12(f). In its screening order, the Court itself expressed some questions about plaintiff's standing as an individual. Dkt. No. 15 at 8. The Court has since found authority that indicates The VR School is in fact the real party in interest for any potential claim under 42 U.S.C. § 1981. *See Domino's Pizza,* 546 U.S. at 480. Accordingly, plaintiff's motion to strike is denied.

### B.    Request for Judicial Notice

Plaintiff has requested that the Court take judicial notice of documents associated with plaintiff's filed cases or appeals in various other forums. Dkt. No. 46. The Court may take notice of decisions of other courts and administrative bodies. Fed. R. Evid. 201(b); *United States v. Ritchie,*

342 F.3d 903, 909 (9th Cir. 2003).  However, plaintiff has already submitted voluminous filings in this case.  The Court will not seek out the decisions of other bodies.  If there are any official decisions from those other tribunals that plaintiff has not yet shared with the Court, he may do so in an appropriate subsequent filing.  If plaintiff chooses to do so, the Court directs plaintiff to explain why the order is relevant to plaintiff's future arguments in this proceeding and to attach the order in its entirety.

### C.     Motion to Join FACTS as a Party

On December 17, 2024, plaintiff filed a motion to join the CDE's vendor FACTS as a party. Dkt. No. 45.  Federal Rule of Civil Procedure 19(a) provides the standard for determining if a party must by joined as "necessary":

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  The determination of whether a non-party should be joined pursuant to Rule 19(a) rests within the discretion of the court based on a consideration of the facts of the case and the policies underlying the rule.  *See Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982). The Ninth Circuit has instructed courts to consider the following when deciding whether a non-party should be joined:

> Underlying policies include plaintiff's right to decide whom he shall sue, avoiding multiple litigation, providing the parties with complete and effective relief in a single action, protecting the absentee, and fairness to the other party. The determination is heavily influenced by the facts and circumstances of each case. It is a misapplication of Rule 19(a) to add parties who are neither necessary nor indispensable, who are not essential for just

15

adjudication and who have a separate cause of action entirely.

*Id*.

Rule 20 allows the permissive joinder of additional defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. Pro. 20(a)(2). In addition to these requirements,

> a trial court must also examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness. For example, when making a decision whether to allow the permissive joinder of a party, a court should consider such factors as the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action.

*Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).

In this case, the Court does not consider FACTS a necessary or indispensable party under Rule 19. Plaintiff's six causes of action in this case revolve around the decision by the CDE—not FACTS—to suspend the VR School's eligibility. Plaintiff has not put forward evidence that FACTS was involved in that decision. Accordingly, plaintiff's current claims do not necessitate adding FACTS as an additional defendant. Plaintiff may make a motion to amend his complaint in a manner that includes FACTS as a defendant if he can make specific claims against FACTS, supported by plausible allegations. At this stage of the litigation, however, such a motion would be evaluated by the Court and not automatically granted.

### D.     Motion to Seal

On December 20, 2024, plaintiff filed a motion to seal exhibits attached to defendants' declarations. Dkt. No. 49. The exhibits contained a screenshot of a webpage that was attached to

United States District Court
Northern District of California

an email sent to defendant Lopes.  The webpage included plaintiff's birthday.  This information was still posted on the public webpage at least through December 21, 2024.  Dkt. No. 50-1.  The Court sealed the requested files pending resolution of the motion.  Counsel for defendants promptly apologized for the oversight and filed redacted versions of the exhibits.  Dkt. Nos. 50-54.

The Court holds that sealing the unredacted exhibits is appropriate but does not find it necessary to consider sanctions or any other additional relief requested by plaintiff.

## CONCLUSION

For the reasons stated above, the Court hereby DENIES plaintiff's motion for summary judgment.  The Court likewise DENIES plaintiff's application for a temporary restraining order, plaintiff's motion to strike, and plaintiff's motion for joinder.  The Court GRANTS plaintiff's motion to seal improperly filed exhibits but does not consider any other relief related to that request.

**The Court orders the parties to appear for an initial case management conference on this matter on January 31, 2025**.  By **January 24, 2025, the parties must submit a joint case management statement** with the information required by the standing order for all judges of the Northern District of California.

**IT IS SO ORDERED**.

Dated:  January 7, 2025

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

17