UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM CHETENI,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MALIA VELLA, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-06286-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 71 |

Plaintiff Freedom Cheteni filed a first amended complaint against defendants Malia Vella and Carrie Lopes asserting six causes of action. Dkt. No. 16. Defendants have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 71. Pursuant to Civil Local Rule 7-1(b), the Court determined that the motion is suitable for resolution without oral argument, and VACATED the March 21, 2025 hearing. As detailed below, the Court GRANTS in part and DENIES in part defendants' motion.

**BACKGROUND**

Plaintiff Freedom Cheteni initially filed a petition in this Court on December 5, 2023 listing as plaintiff The VR School (which Mr. Cheteni operates) and the California Department of Education, Malia Vella, and Carrie Lopes as defendants. Dkt. No. 1. The Court dismissed the case without prejudice when The VR School did not obtain legal representation. Dkt. No. 9. Months later, Mr. Cheteni requested that the Court reopen the case. The Court granted the request on the condition that Mr. Cheteni clarify he was pursuing this case as an individual and that The VR School would no longer be a plaintiff. Dkt. No. 12. The Court then screened plaintiff's original complaint,

dismissing the California Department of Education as a defendant pursuant to the Eleventh Amendment and allowing plaintiff leave to amend to cure other deficiencies. Dkt. No. 15. On October 10, 2024, plaintiff filed a first amended complaint ("FAC") against defendants Malia Vella and Carrie Lopes.[1] Dkt. No. 16 (FAC). Plaintiff proceeds in this case without legal counsel.

Plaintiff's complaint alleges that the defendants discriminated against him and the school he operates in the distribution of funds under the federal Emergency Assistance for Non-Public Schools (EANS) program. *See*, *generally*, FAC. The complaint alleges that defendant Vella is a deputy superintendent at the California Department of Education and defendant Lopes is a program director overseeing the EANS program. *Id.* ¶¶ 17-18. According to the complaint, the department reimbursed plaintiff for the purchase of virtual reality headsets and authorized reimbursement for additional educational services. *Id.* ¶¶ 34-35. The complaint then alleges that defendants "imposed stricter documentation requirements on Plaintiff, including unnecessary statutory audits not required of white-operated businesses." *Id.* ¶ 37. On April 17, 2023, defendant Lopes informed plaintiff that the department suspended his EANS services on the basis of unsatisfactory fiscal documentation, which plaintiff claims was pretext for unlawful discrimination. *Id.* ¶¶ 38-39. On May 17, 2023, plaintiff filed a formal complaint and, on May 20, 2023, defendants "terminated The VR School's EANS services" allegedly in retaliation. *Id.* ¶¶ 40-41.

The FAC lists six counts against the defendants: (1) Racial Discrimination in Making and Enforcing Contracts; (2) Violation of Procedural Due Process; (3) Retaliation for Exercise of First Amendment Rights; (4) Unconstitutional Taking Without Just Compensation; (5) Violation of Equal Protection; and (6) Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. FAC ¶¶ 66-95. Plaintiff seeks declaratory and injunctive relief and damages. *Id.* at 18. Defendants answered the FAC on November 19, 2024. Dkt. No. 34.

Defendants' present motion for judgment on the pleadings presents an unusual posture for the Court, as it comes after plaintiff's denied motion for summary judgment. *See* Dkt. No. 58.

---

[1] While the original complaint listed the defendants as being sued in their official capacity, the FAC lists the defendants as being sued in their individual capacity. Dkt. Nos. 1, 16. Plaintiff later filed a notice clarifying that he was suing the defendants in both their official and individual capacities. Dkt. No. 43.

While the parties submitted additional materials in response to that prior motion, the Court limits its review in this instance to the pleadings.[2]

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss and "the same standard of review applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (internal quotation marks and citations omitted). "[U]nder both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). To survive either a Rule 12(b)(6) motion or a Rule 12(c) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

---

[2] Moreover, in reviewing the parties' motion papers, the Court has not considered plaintiff's supplementary briefs filed after defendants' reply brief in violation of Local Rule 7-3(d).

# DISCUSSION

## I. Standing

Defendants' primary argument is that the injuries alleged in plaintiff's complaint have been suffered by The VR School, not plaintiff, and therefore plaintiff lacks standing himself. Under Ninth Circuit law, a shareholder generally lacks standing to assert an injury to a corporation. *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983). But an individual shareholder has standing when "injured directly and independently of the corporation." *Id.* Asserting personal economic injury is insufficient to establish standing, however. *Id.*

Courts have found allegations of personal emotional distress, humiliation, embarrassment, and damage to professional reputation sufficient to allege an individual shareholder or corporate officer's direct and independent injury. In *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1313 (9th Cir. 1989), the co-owners of a petroleum company sued county pollution control officers for due process violations and unconstitutional retaliation after their public advocacy. The co-owners brought the suit individually and on behalf of their company, seeking damages for lost profits and mental and emotional distress. *Id.* The Court determined the plaintiffs' argument regarding First Amendment retaliation "clearly alleges a direct and independent personal wrong" because the violated rights "belong to Mr. Soranno, not the corporation." *Id.* at 1318-19. Further, the Court held the allegation of emotional distress was sufficient to establish individual standing since "the same conduct can result in both corporate and individual injuries." *Id.* at 1319; *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) (holding that principal owners and shareholders of corporation had individual standing when seeking damages for intentional infliction of emotional distress and defamation and alleging violations of their individual rights under the First and Fourteenth Amendments); *Frazier v. City of Fresno*, No. 120CV01069DADSAB, 2022 WL 1128991, at *7 (E.D. Cal. Apr. 15, 2022) (holding that non-profit organization officer had individual standing to bring constitutional claims when he alleged sustaining general damages, including humiliation, embarrassment, anger, and related emotional distress"); *Brunner v. Cnty. of Yavapai*, No. CV-23-08517-PCT-KML, 2025 WL 588241, at *3 (D. Ariz. Feb. 24, 2025) (holding that co-owner of air touring company who alleged damages to his

4

"good name and reputation" as a result of discrimination had standing, while fellow co-owner who alleged only economic injury did not); *Elizabeth Retail Properties LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 988 (D. Or. 2015) (holding that LLC member had individual standing to seek damages for defamation and harm to her business reputation).

Here, when construed liberally, plaintiff's allegations of individual harm, including "damage to his professional reputation," "emotional distress," and "a chilling effect on his constitutional rights," are sufficient to confer individual standing for most of his constitutional claims. FAC ¶¶ 15, 16, 42, 74, 79, 89. Under the line of case law set forth above, an independent injury to reputation or one's own emotional well-being can serve as the basis for constitutional claims grounded in violations of due process and equal protection. And like the plaintiffs in *Soranno's*, Mr. Cheteni's claim of First Amendment retaliation relates to his personal rights of free speech. *See* 874 F.2d at 1318-19.

However, as previously established by this Court, *see* Dkt. No. 58, the Supreme Court has precluded standing for an individual shareholder or company officer for contract discrimination claims brought under 42 U.S.C. § 1981. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006). Plaintiff's attempts to distinguish *Domino's* fail. *See* Dkt. No. 72 ("Opp'n") at 4. Like Mr. Cheteni's role as the contracting agent for The VR School, the plaintiff in *Domino's* was a sole shareholder and president of his company and the individual responsible for making and enforcing contracts for the company. 546 U.S. at 472, 475. Since principles of corporate and agency law protected the individual *Domino's* plaintiff from liability under the contract, he could not seek damages individually under 42 U.S.C. § 1981. The same holds true for plaintiff in this case.

Defendants argue that the reasoning in *Domino's* applies across plaintiff's other constitutional claims for violations of due process and equal protection, retaliation in violation of the First Amendment, and unconstitutional takings. *See*, *generally*, Dkt. No. 71 ("Mot."). The history of the case law in this area provides some support for defendants' position. The Supreme Court in *Domino's* overturned a short Ninth Circuit opinion that would have allowed the individual shareholder to recover under § 1981. *McDonald v. Domino's Pizza, Inc.*, 107 F. App'x 18 (9th Cir. 2004). The Ninth Circuit in that case relied on earlier circuit precedent, *Gomez v. Alexian Brothers*

5

*Hospital,* 698 F.2d 1019 (9th Cir. 1983), where the court allowed individual standing in a § 1981 suit when the plaintiff asserted injury including "humiliation and embarrassment." The court in *Soranno* also referred to *Gomez* when it found individual standing in constitutional claims outside of the § 1981 context, so one could argue this reasoning rests on shaky ground. *See Soranno*, 874 F.2d at 1319. However, the Supreme Court's emphasis in *Domino's* on the law of contract may limit its holding to the contract-based context of § 1981 claims. As defendants do not highlight and the Court does not find any Ninth Circuit case law that extends the restriction in *Domino's* to other constitutional claims brought under 42 U.S.C. § 1983, the Court declines to extend it here.

In summary, plaintiff's first cause of action for discrimination in contract under § 1981 is dismissed for lack of standing, but lack of standing is not a justification for dismissal of plaintiff's other causes of action.

## II.     Real Party in Interest

Separate from their standing argument, defendants assert that The VR School—not Mr. Cheteni—is the "real party in interest" to bring this lawsuit. Mot. at 2. Defendants correctly note that The VR School was an original plaintiff but then dismissed from the litigation when it did not secure representation by counsel as required for organizational plaintiffs. Dkt. No. 73 ("Reply") at 2. Rule 17 of the Federal Rules of Civil Procedure states, "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The basic purpose of the rule . . . is to protect a defendant from subsequent similar actions by one not a party to the initial action." *Pac. Coast Agr. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975).

While the real party in interest and standing are distinct legal concepts, "it is settled that once a party is found to have standing to raise a constitutional point, that ruling disposes of any real party in interest objections as well." *Apter v. Richardson*, 510 F.2d 351, 353 (7th Cir. 1975) (citations omitted).[3] In *Apter*, a doctor challenged the denial of a federal health research grant on constitutional

---

[3] One treatise describes the relationship between the concepts of standing and real party in interest this way:
> In the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional

6

grounds, but her claims were dismissed by the district court because it determined her medical center was the applicant and real party in interest, even though the doctor had prepared the application. *Id.* The appellate court reversed, determining that the doctor had standing and could therefore bring the suit. *Id.* at 354.

Given that the Court has found that plaintiff here has standing to pursue certain claims, the Court will not dismiss those claims on the basis that plaintiff is not the real party in interest. However, the Court recognizes that the underlying purpose of Rule 17 is to prevent defendants from facing recurring litigation. Since The VR School is not a party to this lawsuit, defendants may rightfully fear a separate suit from The VR School should it be able to retain counsel. In another light, defendants present a question of required joinder under Rule 19. Under that rule, The VR School's joinder would likely be required if feasible, but its inability to return to the Court with legal counsel suggests the joinder is not feasible in this instance. Therefore, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Under these circumstances, where plaintiff is both the named party and the operator of the missing organizational party, the Court finds it appropriate to allow the litigation to proceed, recognizing that any subsequent judgment may have preclusive effect over The VR School.

---

principle, the question whether the challenger is a proper party plaintiff to assert the claim rarely is analyzed in terms of real-party-in-interest or capacity principles. Instead, the courts have tended to rely on the judicial doctrine of standing to sue. To the extent that standing in this context is understood to mean that the litigant actually must be injured by the governmental action that the litigant is assailing, then it closely resembles the notion of real party in interest under Rule 17(a), inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to be entitled to be heard on the merits. Thus, for example, the well-settled rule that a party ordinarily does not have standing to raise the constitutional rights of another person who is not joined in the suit may be thought of as merely a particular application of the real-party-in-interest principle.

Real Party in Interest, Capacity, and Standing Compared, 6A Fed. Prac. & Proc. Civ. § 1542 (3d ed.) (footnotes omitted).

### III. Other Arguments Related to Specific Causes of Action

#### A. Unconstitutional Taking

In the original complaint, plaintiff alleged that defendants committed an unconstitutional taking of his property without just compensation. Dkt. No. 1. The Court dismissed this cause of action in its initial screening order since it was not clear that the equipment in question was plaintiff's private property. Dkt. No. 15 at 7-8. In the FAC, plaintiff alleges he had property interests in EANS-funded equipment and services.

Defendants argue that, by statute, EANS-funded services and equipment remain under the control of the state and therefore never became plaintiff's private property. Mot. at 6 (citing the Coronavirus Response and Relief Supplemental Appropriations (CRRSA) Act of 2020, § 312(d)(7)). Specifically, the law states, "The control of funds for the services or assistance provided to a non-public school under this subsection, and title to materials, equipment, and property purchased with such funds, shall be in a public agency, and a public agency shall administer such funds, services, assistance, materials, equipment, and property." CRRSA, Pub. L. No. 116-260, § 312(d)(7) 134 Stat. 1928 (2020). Plaintiff's opposition concedes this statute "may place title to certain EANS-purchased property with public agencies" but contends that he maintains a protected property interest in the contractual rights. Opp'n at 5-6.[4] Plaintiff seems to be merging his due process claim and his unconstitutional taking claim, but these present distinct questions. The Court holds that the language of CRRSA precludes plaintiff's cause of action for an unconstitutional taking of property, because it establishes that the property in question was never in private ownership. Defendants do not assert that the language of the CRRSA precludes plaintiff's due process claim, nor does the Court hold as much.

In short, the Court dismisses with prejudice plaintiff's fourth cause of action alleging an unconstitutional taking without just compensation.

---

[4] In this section of his opposition, plaintiff provides a citation to *Westland Water Dist. v. Natural Resources*, 153 F.3d 1092, 1102 (9th Cir. 1998), but the Court cannot find any evidence that such a case exists. The Court suspects this citation resulted from the use of an artificial intelligence tool. As the Court has previously warned plaintiff, indiscriminate use of such tools harms plaintiff's credibility in this action. *See* Dkt. No. 68 at 2 n.2.

### B.   Violation of Title VI of the Civil Rights Act of 1964

Lastly, defendants argue that plaintiff's Title VI cause of action fails because individual defendants cannot be sued under Title VI, which proscribes discrimination by a federally-funded "program or activity." Mot. at 7 (citing *Ogando v. Natal*, No. 23-CV-02221-JSC, 2023 WL 8191089, at *7 (N.D. Cal. Nov. 27, 2023)). Conceding this point as to individuals sued in their personal capacity, plaintiff maintains that defendants can be sued under Title VI in their official capacities for prospective injunctive relief per *Ex parte Young*, citing *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003). Opp'n at 7. The holding in *Miranda B.* allowed *Ex parte Young* suits for violations of Title II of the Americans with Disabilities Act, but drew comparisons between that law and Title VI of the Civil Rights Act, the law at issue here. *Id.* at 1187-89 ("Moreover, before the ADA was enacted, other circuits had determined that *Ex parte Young* suits were permissible for violations of Title VI and Section 504. [Citation.]"). In reply, defendants maintain that *Ex parte Young* does not apply because plaintiff (1) has not sued the defendants in their official capacity, (2) has not limited his request for relief to prospective injunctive relief, and (3) has not identified an ongoing federal violation because the EANS program ended in 2024. The Court considers each argument in turn.

First, plaintiff has clarified subsequent to the filing of the FAC that he is suing defendants in their official and individual capacities. Dkt. No. 43. The Court construes the filings of pro se plaintiffs liberally. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). Courts also may rely on the "basis of the claims asserted and nature of relief sought" to determine the capacity in which the defendants are being sued. *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (internal quotation marks and citation omitted). Here, since plaintiff seeks damages and injunctive relief, the Court considers the suit to be against the defendants in their individual and official capacities.

Second, when a suit is against defendants in both capacities, plaintiff may properly seek damages from officials in their individual capacities and prospective injunctive relief from officials in their official capacity. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (discussing the forms of liability for state officials under § 1983). Defendants' cited authority does not support the

1    proposition that a plaintiff cannot pursue both avenues at the same time.

2        Nonetheless, defendants' third argument that prospective relief is unavailable because the
3    EANS program ended last year presents a closer question. Since EANS funding is no longer
4    available, defendants reason, there is no longer any possible ongoing violation of Title VI's anti-
5    discrimination provision. Reply at 5. The Court is not persuaded, at least at this stage of the
6    proceedings. The specific language in the FAC provides, "Plaintiff seeks injunctive relief to enforce
7    compliance with Title VI and compensatory damages for the harm suffered and for defendants to be
8    enjoined from unlawfully telling payment agents not to reimburse Plaintiff's vendors for services
9    already provided under EANS without due process of law." FAC ¶ 95. Plaintiff's theory of recovery
10   seems to be that the state's payment agents would pay him certain amounts but for the continued
11   direction of defendants. As a factual matter this may be disputed, but that is not for the Court to
12   decide on this Rule 12(c) motion. Plaintiff may therefore continue seek an injunction preventing
13   defendants from future unlawful discrimination. *See Jensen v. Brown*, No. 23-2545, 2025 WL
14   748139, at *15 (9th Cir. Mar. 10, 2025) (allowing an *Ex parte Young* suit to proceed where the
15   plaintiff asked for declaratory judgment and for an injunction against an alleged retaliatory practice).

16       Consequently, the Court will dismiss any claim for damages against the defendants in their
17   individual capacities under plaintiff's sixth cause of action, but will not dismiss an *Ex parte Young*
18   claim under this count.

## CONCLUSION

21       For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and
22   DENIES in part defendants' motion for judgment on the pleadings. Specifically, plaintiff's first and
23   fourth causes of action are dismissed in full, as well as any claims against defendants in their
24   individual capacities under plaintiff's sixth cause of action. As the Court sees no avenue for curing
25   the identified deficiencies in these counts, they are dismissed with prejudice. The Court does not
26   dismiss plaintiff's second, third, and fifth counts brought under 42 U.S.C. § 1983 for violation of
27   due process, retaliation for exercise of First Amendment rights, and violation of equal protection.
28   The Court likewise does not dismiss an *Ex parte Young* claim under plaintiff's sixth cause of action.

The Court orders the parties to appear at a case management conference on **April 18, 2025** in order to set a schedule for discovery in this case. The Court further orders the parties to meet and confer and submit a proposed joint statement with a case schedule no later than **April 11, 2025**. If the parties cannot agree to a schedule, they are to provide their competing proposals in the joint statement.

**IT IS SO ORDERED**.

Dated: March 26, 2025

_____
SUSAN ILLSTON
United States District Judge