United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREEDOM CHETENI,

Plaintiff,

v.

MALIA VELLA and CARRIE LOPES

Defendants.

Case No. 23-cv-06286-SI

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 168, 171

This litigation concerns the California Department of Education (CDE's) suspension of funds to The VR School under the federal Emergency Assistance for Non-Public Schools (EANS) program. Defendants are Malia Vella, the then-Deputy Superintendent of the CDE with oversight of the EANS program, and Carrie Lopes, a CDE Education Administrator who supported implementation of the EANS program. Dkt. No. 168-1 ("Lopes Decl.") ¶¶ 1-2; Dkt. No. 168-5 ("Vella Decl.") ¶¶ 2-3. Plaintiff's complaint alleges that the defendants discriminated against him and the private school he operates in the distribution of EANS funds. *See, generally*, Dkt. No. 16 ("First Amended Complaint (FAC)").

Before the Court are cross-motions for summary judgment filed by plaintiff Freedom Cheteni and defendants Malia Vella and Carrie Lopes. Dkt. No. 168 (Def. MSJ); Dkt. No. 171 (Pl. MSJ). The Court heard oral argument on March 3, 2026. Dkt. No. 130. Having considered the parties' arguments, the relevant legal authority, and the record in this case, the Court GRANTS defendants' motion and DENIES plaintiff's motion.

**BACKGROUND**

## I.    Factual Background

### A.    The EANS Program

Two federal relief programs initiated during the Covid-19 pandemic provided funding for the EANS program to be distributed by the states: the Coronavirus Response and Relief Supplemental Appropriations (CRRSA) Act of 2020 and the American Rescue Plan (ARP) Act of 2021. CRRSA EANS funds could be used to reimburse private schools directly for allowable expenses. CRSSA, Pub. L. No. 116-260, § 312(d)(4)(M), 134 Stat. 1928 (2020). However, Congress prohibited states from directly reimbursing non-public schools[1] with ARP EANS funds.[2] ARP, Pub. L. No. 117-2, § 2002(b), 135 Stat. 23 (2021). ARP limited eligibility to non-public schools that enrolled a "significant percentage" of low-income students.[3] ARP, § 2002. The "significant percentage" of low-income students the state of California required for ARP EANS eligibility was 20 %. Lopes Decl. ¶ 11, Ex. 4 (ARP EANS Request for Applications) at 6.

For both CRRSA and ARP EANS funding, applicants were required to report their total student enrollment for the 2019-2020 school year, the number or estimated number of students from low-income families enrolled in the 2019-2020 school year, and the "data sources" the applicant "use[d] as verification" of that low-income count. Lopes Decl., Ex. 3 (CRRSA EANS Request for Applications) at 7-8, Ex. 4 at 8-9. While neither application required the applicant to "submit the selected, allowable data source with the application," both applications required applicants to "retain records for a period of five years to verify compliance" in case of an audit review. *Id.* The applications state that CDE had a right to audit applicant records for compliance with eligibility requirements and required applicants to certify that the information they provided was correct, under

---

[1] Federal terminology uses "non-public" instead of "private" schools.

[2] In parties' filings and during the hearing, CRRSA EANS is also sometimes referred to as "EANS I" and ARP EANS is also sometimes referred to as "EANS II."

[3] Low-income is defined as a student whose family income did "not exceed 185 percent of the 2020 Federal poverty level." 86 F.R. 36652; Dkt. No. 168-1 ("Lopes Decl." ¶ 11, Ex. 4 (ARP EANS Request for Applications) at 7.

penalty of perjury. *Id.*, Ex. 3 at 12-13, Ex. 4 at 1, 12-13.

### B.      The VR School's EANS Applications

In April 2021, The VR School[4], with plaintiff as its representative, applied for CRSSA EANS online via snap survey, stating in its application response that it had a total enrollment of 82 students in the 2019-2020 school year, and that all 82 students were from low-income families. Lopes Decl. ¶ 18, Ex.5 (Spreadsheet Application Responses); Dkt. No. 168-4 ("Franco Decl.") ¶¶ 2-5, Ex.65 (RFA Req. Nos 1, 6, 9, 11, 13-15), Ex. 68 (Admissions); Pl. Depo. at 46:25-47:7.[5] The VR School's CRSSA EANS application was approved on May 12, 2021. Lopes Decl. ¶ 18. The VR School received direct reimbursements of $115,631 within six months, the full amount available to it based on its reported 2019-2020 enrollment and low-income count, following three expenditure reports The VR School submitted in July, August, and October 2021. Lopes Decl. ¶¶ 18-19, Exs. 7-9 (the 3 expenditure reports); Franco Decl. ¶¶2-5; Ex. 65 (RFA Req. No. 17), Ex. 68 (Admitting No. 17).

In January 2022, The VR School applied for ARP EANS online via snap survey, stating in its application response that it had a total enrollment of 180 students in the 2019-2020 school year,

---

[4] While only "non-profit" non-public schools operating in accordance with California law were eligible for EANS services, there is no non-profit entity registered by the name of "The VR School" in California. Lopes Decl. ¶ 14, Ex. 3 at 5, Ex. 4 at 5-6; Franco Decl. ¶ 14. In plaintiff's deposition, he testified that while there were several entities doing business as "The VR School", "InventXR Education Foundation" was the relevant entity when The VR School applied for EANS services. Dkt. No. 174-2, ("Pl. Depo.") at 51:3-52:3, 25:2-26:14. Defendants request that the Court take judicial notice of five documents related to the status of this entity: Franco Decl. ¶ 40, Ex. 84 (Articles of Incorporation InventXR Education Foundation); Franco Decl. ¶ 44, Ex. 88 (Calif. Sec. of State Status InventXR Education Foundation); Franco Decl. ¶ 45, Ex. 89 (Calif. Franchise Tax Board Entity Status Letter InventXR Education Foundation); Franco Decl. ¶ 42, Ex. 89 (Santa Clara Clerk Recorder The VR School Business Name Filing); and Franco Decl. ¶ 48, Ex. 90 (Wyoming Sec. of State Application for Registration of Trade Name by InventXR, LLC). Dkt. No. 170. A district court may take judicial notice of facts that are "not subject to reasonable dispute" because they are (1) "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). "Accordingly, '[a] court may take judicial notice of matters of public record.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal citation omitted). The Court takes judicial notice of these documents, finding their authenticity and content undisputed.

[5] The parties attached overlapping and distinct portions of plaintiff's deposition to their briefs. Dkt. No. 168-4 ("Franco Decl.") ¶¶ 7-8, Exs. 69 and 70; Dkt. No. 174-2.

and that all 180 students were from low-income families. Lopes Decl. ¶ 20, Ex. 11 (Email Confirmation of Application Responses), Ex. 12 (ARP EANS Cover Sheet); Franco Decl; ¶¶ 2-5; Ex. 65 (RFA Req. No. 26), Ex. 68 (Admitting No. 26). The VR School's ARP EANS application was approved in August 2022. Lopes Decl. ¶ 20. The CDE originally allocated $834,102 in ARP EANS funds for services and assistance to The VR School. *Id*. ¶ 37, Ex. 24 ("Final Monitoring Review Memo") at 2.

### C.    Approved Vendor Concerns

On November 9, 2022, Jackie Degel, Regional Vice President of FACTS Educational Solutions (FACTS), one of CDE's 10 approved vendors for ARP EANS services[6], emailed Carrie Lopes raising a conflict of interest concern about an invoice for $220,000 to "InventXR, LLC" describing items to be provided to the VR School. Lopes Decl. ¶¶ 1, 23-24, Ex. 13 (Nov. 19, 2022 FACTS Email); Pl. Depo. 76:12-79:7.[7] The email stated that the address of the Invent XR, LLC was the same physical address as the VR School, that The VR School's main contact person, Freedom Cheteni, was the Chairman, CEO, and Co-Founder of InventXR, LLC, and that "it appears that the school is paying itself." *Id*. The next day Degel emailed Lopes a follow-up email, stating that she had spoken with plaintiff, and plaintiff stated he was a "consultant but not an employee" of InventXR, LLC. *Id*. ¶ 24, Ex. 14 (Nov. 20, 2022 FACTS Email).

Based on Degel's concerns, Lopes reviewed information submitted to the CDE by The VR School, which indicated possible self-dealing between The VR School and InventXR, LLC. Lopes

[6] Non-public schools could only obtain ARP EANS services by working through one of the CDE's 10 approved vendors. Lopes Decl. ¶ 20.

[7] In plaintiff's deposition, plaintiff testified that Jackie Degel raised concerns of self-dealing between the VR School and InventXR LLC on this date because Carrie Lopes was "pushing her to send this email" and that "this was just a – you know, in response in retaliation to my complaints which I began, you know, to lodge in 2022." Pl. Depo at 77:13-79:17. Plaintiff states that he began making discrimination complaints against Lopes in 2022. *Id*. Plaintiff testified Lopes did not want him to hire Black educators and called him the n-word, but he does not produce any other evidence of Lopes' alleged discriminatory actions or any complaints he allegedly made in 2022. *Id*. at 317:15-24; 322:6-338.3.

4

Decl. ¶¶ 25-31, Exs. 7-9 (the 3 expenditure reports), Ex. 15 (Nov. 22, 2022 Plaintiff Email), Ex. 16 (Payee Data Record); Exs. 17-21 (Private School Affidavits). The review also demonstrated The VR School reported a far lower student enrollment count prior to Congress's authorization of the EANS program. *Id.*; Pl. Depo. 69:12-72:13.

### D. Monitoring Review of The VR School

The parties dispute the nature of subsequent events. According to defendants, based on the concerns raised by Degel's email and Lopes' review, CDE initiated a monitoring review. Lopes Decl. ¶ 31; Vella Decl. ¶¶ 3-6; Dkt. No. 168-6 ("Pierson Decl.") ¶¶ 2-7. Plaintiff maintains that defendants "orchestrated a sham monitoring process, dictated its outcome, and then used it as a pretext to suspend and terminate vital federal funding." Pl. MSJ at 1.

A member of the monitoring review team provided notice of the review to plaintiff, scheduled a March 13, 2023 entrance conference, and advised plaintiff that a written notice would soon follow. Dkt. No. 168-3 ("Hayano Decl.") ¶¶ 3-6, Ex. 27 (Feb. 27, 2023 Email). On March 3, 2023, CDE sent The VR School written notice of the monitoring review and the entrance conference, and instructed The VR School to upload records needed for the review to a virtual drive prior to the entrance conference. Dkt. No. 168-2 ("Woodcheke Decl.") ¶¶ 13-14, Ex. 28 (Written Notice of Monitoring Review). Plaintiff received the communication and responded on March 7, 2023 saying, "thank you." Pl. Depo. at 162:18-165:8. On March 9, 2023, The VR School uploaded several records, which the monitoring team reviewed and found insufficient to support The VR School's recorded enrollment count, low-income count, and CRSSA EANS expenditures. Woodchecke Decl. ¶¶ 15, 19; Exs. 40, 41, 42, 43, 44, 45, 46, 47 (Docs Uploaded by Plaintiff March 9, 2023).

The monitoring review team met with plaintiff on March 13, 2023 and requested further documentation. *Id*. ¶¶ 16-17, Ex. 30 (Mar. 13, 2023 Email to Plaintiff). On March 17, 2023, plaintiff emailed the monitoring review team a PDF he described as "written summaries to the required documents." *Id.* ¶ 18, Ex. 31 (Plaintiff's March 17, 2023 Email). On March 24, 2023, the monitoring review team emailed plaintiff providing him a deadline of April 7, 2023 to provide the required documentation. *Id.* ¶¶ 21-22, Ex. 49 (March 24, 2023 Email to Plaintiff). That same day,

plaintiff responded that the documentation issues were already resolved. *Id.* ¶¶ 21-22, Ex. 50 (March 24, 2023 Email Thread); Pl. Depo. 165:14-166:25. The monitoring review team replied that there was "some confusion" regarding the documentation required and scheduled a meeting with plaintiff for March 28, 2023. Woodchecke Decl.¶¶ 21-22, Ex. 50 (March 24, 2023 Email Thread). Following the March 28, 2023 meeting, The VR School did not provide any additional documentation. *Id.* By April 12, 2023, the review concluded that The VR School did not maintain sufficient documentation to support the claimed low-income student enrollment numbers or any documentation to substantiate that the amounts claimed and reimbursed under CRSSA EANS were expended for allowable services or costs. *Id.* ¶¶ 19-36.[8]

Plaintiff states that at unidentified points during these events, Lopes used "explicitly racist language toward Plaintiff, including the 'n-word' during off-system personal cell phone calls witnessed by CDE staff." Pl. MSJ at 2. In her declaration, Lopes "strongly den[ies]" making any racist or derogatory statements or taking any discriminatory actions against plaintiff. Lopes Decl. ¶¶ 40-43.

### E.    Suspension of EANS to The VR School & Racial Discrimination Complaint

Vella decided to suspend additional EANS to The VR School until appropriate documentation was provided. Vella Decl. ¶ 8. Lopes sent an email informing The VR School of that decision on April 17, 2023. Lopes Decl. ¶ 35, Ex. 22 (Apr. 17, 2023 Lopes Email).

On April 19, 2023 plaintiff sent an email characterizing CDE's documentation demands as "discriminatory" and stating that he would not "comply to White supremacy." Cheteni MSJ at 1; Dkt. No. 171-1 at 133. On May 9, 2023 plaintiff appears to have sent Carrie Lopes an email saying that "White peoples get favorable treatment in the EANS program." Dkt. No. 171-2 at 647. On May 17, 2023, plaintiff wrote a formal com        plaint email to Lopes and others alleging systemic racism and biased treatment of Black teachers. Cheteni MSJ at 1; Dkt. No. 171-1 at 590-91. Lopes states plaintiff only started making these allegations of discrimination after The VR School's EANS

---

[8] Conversely, plaintiff states in his deposition that the monitoring review "found [plaintiff's documentation] sufficient and they did reflect that in their report." Pl. Depo. 121:7-14.

United States District Court
Northern District of California

assistance was suspended. Lopes Decl. ¶¶ 40-43.

The monitoring review team finalized a formal memorandum of their findings on May 18, 2023. Woodcheke Decl. ¶¶ 38-39, Ex. 24. Vella then used language from this memo in a letter to The VR School explaining the decision to suspend EANS services in more detail than had been provided in the previous email. Vella Decl. ¶ 10; Lopes Decl. ¶¶ 37-38, Ex. 55 (May 20, 2023 Vella Letter).

## II. Procedural Background

Plaintiff Freedom Cheteni initially filed a petition in this Court on December 5, 2023 listing as plaintiff The VR School (which Mr. Cheteni operates) and the CDE, Malia Vella, and Carrie Lopes as defendants. Dkt. No. 1. The Court dismissed the case without prejudice when The VR School did not obtain legal representation. Dkt. No. 9. Months later, plaintiff requested that the Court reopen the case. The Court granted the request on the condition that plaintiff clarify he was pursuing this case as an individual and that The VR School would no longer be a plaintiff. Dkt. No. 12. The Court then screened plaintiff's original complaint, dismissing the CDE as a defendant pursuant to the Eleventh Amendment and allowing plaintiff leave to amend to cure other deficiencies. Dkt. No. 15.

On October 10, 2024, plaintiff filed a first amended complaint against defendants Malia Vella and Carrie Lopes. Dkt. No. 16 ("FAC").[9] Plaintiff proceeds in this case without legal counsel. The FAC lists six counts against the defendants: (I) Racial Discrimination in Making and Enforcing Contracts; (II) Violation of Procedural Due Process; (III) Retaliation for Exercise of First Amendment Rights; (IV) Unconstitutional Taking Without Just Compensation; (V) Violation of Equal Protection; and (VI) Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. FAC ¶¶ 66-95. Plaintiff seeks declaratory and injunctive relief and damages. *Id*. at 18.

The Court denied plaintiff's first motion for summary judgment without prejudice as

---

[9] While the original complaint listed the defendants as being sued in their official capacity, the FAC lists the defendants as being sued in their individual capacity. Dkt. Nos. 1, 16. Plaintiff later filed a notice clarifying that he was suing the defendants in both their official and individual capacities. Dkt. No. 43.

7

premature on November 13, 2024.  Dkt. No. 31.  Defendants answered the FAC on November 19, 2024. Dkt. No. 34.  Plaintiff filed a motion for partial summary judgment, which the Court denied on January 7, 2025.  Dkt. Nos. 35, 39, 58.  Defendants moved for judgment on the pleadings on February 14, 2025.  Dkt. No. 71.  The Court granted in part and denied in part defendants' motion, dismissing Counts I and IV, and limiting Count VI to an official capacity claim.  Dkt. No. 84.  Thus, only Counts II, III, V, and VI remain.

On December 5, 2025, plaintiff filed a motion requesting, among other things, that the Court "provide leave for plaintiff to file his partial summary judgment motion."  Dkt. No. 164 at 15.  The Court granted plaintiff leave to file a second motion for summary judgment with a filing deadline of January 30, 2026.  Dkt. No. 166.  On January 30, 2026, defendants filed a motion for summary judgment, an associated administrative motion to consider whether plaintiff's material should be sealed, and a request for judicial notice.  Def. MSJ; Dkt. Nos. 168, 169, 170.  On January 31, 2026, plaintiff filed a motion for partial summary judgment and a filing titled "plaintiffs declaration and Rule 56.1 Statement of Undisputed Material Facts."  Pl. MSJ; Dkt. No. 172.  Both plaintiff and defendants responded on February 13, 2026.  Dkt. Nos. 173 ("Def. Opp'n"), 174 ("Pl. Opp'n").  Defendants filed a reply on February 20, 2026, and plaintiff filed two replies on February 21, 2026.  Dkt. Nos.  175, 176, 177.  Defendants filed a procedural objection to plaintiff's replies.  Dkt. No. 178.  The Court heard oral argument on March 3, 2026.  Shortly before the hearing, plaintiff filed two other docket entries including various exhibits.  Dkt. Nos.  180, 181.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's

8

case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

**DISCUSSION**

I.      **Procedural Issues**

The Court first addresses procedural issues defendants raise with plaintiff's motion for summary judgment. Defs. Opp'n at 1-7. Defendants argue that plaintiff's motion for summary judgment should be denied outright as untimely because plaintiff filed his motion one day late. *Id.* at 1-2; *see* Dkt. No. 166. Defendants also point to numerous Civil Local Rules plaintiff violates as grounds for denial. *Id.* at 2-4; *see* Civ. L. Rules 7(2)(b)(3)-(4), 7-2(d), 7-4(a), 7-5, 56(a). Finally, defendants argue that plaintiff's moving papers violate Federal Rule of Civil Procedure 56(c) by making unsupported statements of alleged fact and relying on inadmissible evidence not supported by declarations. *Id.* at 4-7.

The Court has reviewed all of plaintiff's filings. Along with plaintiff's 15-page motion for

United States District Court
Northern District of California

partial summary judgment (Dkt. No. 171), plaintiff also filed: (i) 762 pages that consist of duplicative, unidentified, and unauthenticated portions of various documents and emails (Dkt. No. 171-1); (ii) 787 pages, which include a copy of William McGee's deposition transcript and duplicative and unauthenticated portions of various documents and emails (Dkt. No. 171-2); (iii) plaintiff's 1.5-page declaration that describes small portions of the thousands of pages of attachments, as well as additional unauthenticated and duplicative portions of various documents (Dkt. Nos. 172, 172-1, 172-2, 172-3, 172-5, 172-6, 172-7); (iv) a 130-page narrative brief further explaining plaintiff's position (Dkt. No. 172-4).[10]    Many portions of these disorganized and voluminous filings appear to be AI generated.

The Court agrees with defendants that plaintiff has violated numerous procedural rules. Even so, the Court will not deny pro se plaintiff's motion solely because of his failure to comport with the rules. The Court addresses these procedural issues to the extent they affect defendants' motion for summary judgment and the claims in this case.

## II.    Procedural Due Process Claim (COUNT II)

Plaintiff argues that defendants deprived him of a property right without due process by terminating EANS services based on "shifting standards," "allowing Lopes to play a central role in authoring the decisional document" denying EANS funds although plaintiff alleges Lopes racially discriminated against him, and denying a promised California Office of Administrative Hearings (OAH) hearing.    Pl. MSJ at 4.    Defendants argue that plaintiff cannot prove that he had a constitutionally protected property interest and that plaintiff was given a meaningful opportunity to be heard.    Def. MSJ at 13-17.

---

[10] As an attachment to plaintiff's opposition to defendants' motion for summary judgment, plaintiff also filed a 16-page declaration and a copy of his deposition transcript.    Dkt. Nos. 174-1, 174-2.    Plaintiff's reply is 56 pages in length and accompanied by a blank 36-page attachment.    Dkt. Nos. 176, 176-1.    In reply, plaintiff also filed a 33-page declaration and a 36-page "exhibit jury statement," which appears to be plaintiff's summary of the case so far.    Dkt. Nos. 177, 177-1. Defendants object to plaintiff's "reply" filings as untimely and in violation of Civil Local Rule 7-3(c)-(d), which limits replies to 15 pages and prohibits the filing of additional papers after the movant's reply.    Dkt. No. 178.    The Court disregards plaintiff's second reply filing, Dkt. No. 177.

United States District Court
Northern District of California

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir. 1998).

As this Court previously explained in denying plaintiff's first motion for summary judgment, even if an eligible non-public school had a property right to ARP EANS participation, a non-eligible non-public school did not. Dkt. No. 58 at 10-11. Defendants present records establishing that "The VR School" did not demonstrate ARP EANS eligibility. Def. MSJ at 18-11; Def. Opp'n at 7-10. ARP limited eligibility to non-public schools that enrolled a "significant percentage" of low-income students. ARP, § 2002. The "significant percentage" of low-income students the state of California required for ARP EANS eligibility was 20 %. Lopes Decl. ¶ 11, Ex. 4 at 6. ARP EANS applicants were required to report the school's enrollment count, the school's low-income count, and the "data sources" the applicant "use[d] as verification" of that low-income count. *Id.* at 8-9. Applicants were required to "retain records for a period of five years to verify compliance" in case of an audit review. *Id*. Plaintiff admits that when he applied for ARP EANS on behalf of The VR School, he reported 180 students enrolled in the 2019-2020 school year and that 100% of them qualified as low income, "based on comprehensive E-Rate[11] records maintained in accordance with federal requirements." Franco Decl. ¶ 5, Ex. 68 at 146-47 (Response to RFA No. 26).

None of the documents plaintiff submitted to the CDE, either leading up to the termination of EANS benefits or later in discovery, establish the required enrollment or low-income count. Woodchecke Decl. ¶¶ 19-20, Exs. 32-48; Franco Decl. ¶¶ 18-19, Exs. 76-78. During the monitoring review, plaintiff submitted a narrative without student data, a 20-page document with numerous

---

[11] The Federal Communications Commission (FCC) allows schools to apply for discounts on internet access and other telecommunications services through the E-Rate program. Private schools not participating in the National School Lunch Program (NSLP) can establish low-income status through a survey sent to all families whose students attend the school that must contain "Name of family and students; Size of the family; and Income Level of the family," or by use of an existing data source that "measures levels of poverty," such as a need-based tuition assistance program. https://www.usac.org/e-rate/applicant-process/applying-for-discounts/alternative-discount-mechanisms (last accessed Feb. 22, 2026). Plaintiff does not establish that he ever applied for the E-Rate program.

11

@thevrschool email addresses (many of which were repeated and apparently associated with the same unidentified person), and a 2-page document that listed the names of 30 alleged students but provided no other information about the students, their enrollment, where they lived, their age or the family's income.  Woodchecke Decl. ¶¶ 19-20, Exs. 33, 34, 35, 36.  Then, during litigation, on September 10, 2025, plaintiff provided defendants' counsel an Excel spreadsheet titled "VR Student Roster SY 2019-2020 iStudy SIS – Includes Tribal Students.csv."  Franco Decl. ¶¶ 18-19, Ex. 76-79.  That spreadsheet included student id, student name, @thevrschool email address, and city, state, and zip code, but no records that show a student's family income did not exceed 185 percent of the federal poverty level as required by ARP EANS.  *Id.*[12]  These documents do not establish EANS eligibility.

Plaintiff offers nothing to dispute the defendants' evidence, nor does he identify evidence supporting The VR School's EANS eligibility that he allegedly has but did not give to the monitoring review team.  Instead, plaintiff argues that the monitoring review team initially found his documentation satisfactory, but none of plaintiff's filings include evidence that the monitoring review team ever found his documentation sufficient.  Pl. Opp'n at 10-12.  Plaintiff also states that both Lopes and Vella admitted in their depositions that the VR School did in fact submit sufficient documentation.  *Id.* at 3, 15.   However, plaintiff points only to his own November 14, 2025 declaration (Dkt. No. 161), not to any specific point in either Lopes or Vella's depositions where they made these alleged admissions (nor could the Court find such admissions in reviewing the deposition transcripts plaintiff filed at Dkt. Nos. 163-1 and 164-1).  This claim appears patently false.  Plaintiff himself seems to acknowledge that he did not establish ARP EANS eligibility by stating in his opposition that establishing eligibility is "impossible."  Dkt. No. 174-1.  Therefore, the Court finds that no reasonable jury could find that plaintiff had a property interest in ARP EANS to establish the first required element of a due process claim.[13]

---

[12]Defendants also point out this spreadsheet has numerous irregularities including different student names with the same @thevrschool.org email address. Def. Mot. at 9-11.

[13] Defendants also argue comprehensively that plaintiff was not deprived of a liberty interest. Def. MSJ at 15-16. While plaintiff briefly suggests he "has a stigma-plus claim" in his opposition the only reasoning he provides is that defendants "impugn[ed] Dr.Cheteni's honesty and integrity

During the hearing, plaintiff argued that his motion for partial summary judgment should be granted at least on his due process claim. Plaintiff argued that evidence of defendants' denial of due process was produced to him in discovery and to the Court. Plaintiff directed the Court specifically to docket numbers 126-18, page 3 and 181, page 2. The Court has carefully reviewed both documents,

Docket number 126 is plaintiff's ex parte application for summary judgment filed on August 4, 2025, which the Court denied on August 5, 2025. Dkt. Nos. 126, 127. At docket number 126-18, page 3 appears an email William McGee, then-CDE Student Achievement and Support Division Director, appears to have sent to plaintiff on June 21, 2023. That email states in full:

> In response to your June 16 email, the appeal you emailed on June 15 is sufficient to initiate the appeal process with OAH. You will have the opportunity in connection with the hearing of the appeal to offer documents and witnesses in support of your case, including Randi Thompson's report if you wish (Government Code § 1153). We will provide you with a copy of the report as soon as it becomes available. While we are unable to provide you legal advice, for which you should consult with an attorney of your choosing, you will find applicable resources on OAH's website at https://www.dgs.ca.gov/OAH/Case-Types/General-Jurisdiction/Resources.

Dkt. No. 126. Plaintiff stated that procedural due process was denied because he never had the opportunity to participate in an OAH hearing.

Docket number 181 was filed by plaintiff shortly before the hearing on March 3, 2026. Dkt. No. 181. At page 2 is a flow chart of the CDE Office of Equal Opportunity (OEO's) complaint process. Plaintiff also argued he was never provided the "closure letter" indicated in that flow chart after submitting his discrimination complaint.

The Court concludes that neither document establishes that plaintiff was denied due process. As defendants explain, CDE did not provide a right or process for private schools to appeal a CDE EANS conclusion after a full monitoring review. Def. Mot. at 17; Dkt. No. 168-7 ("McGee Decl.")

---

as an educator" by concluding that The VR School failed to maintain required documentation and misrepresented its enrollment. Pl. Opp'n at 17. The Court is unpersuaded, and, in any event, the Court need not address this argument, since plaintiff's complaint does not allege deprivation of liberty. Dkt. No 16 ¶ 73; *see Terpin v. AT&T Mobility,* LLC, 118 F.4th 1102, 1113 (9th Cir. 2024) (unpled claims cannot defeat a motion for summary judgment); *Pickern v. Pier I Imports (U.S.), Inc.* 457 F.3d 963, 968-69 (9th Cir. 2026) (same). Nor does plaintiff's motion argue that defendants deprived him of a liberty interest. Pl. MSJ.

¶ 9, Ex. 60 ("June 6, 2023 McGee Appeal Email").  Still, the CDE allowed plaintiff to argue to the OAH that he had a right to appeal the CDE's EANS decision under the General Education Procedures Act (GEPA).  Def. Mot. at 17; McGee Decl. ¶ 9, Ex. 60.  Those proceedings resulted in a finding that plaintiff did not have a GEPA right to appeal. Def. Mot. at 17; McGee Decl. ¶¶ 10-13, Exs. 61 ("Order of Dismissal, Chief Administrative Law Judge for U.S. Department of Education's (DOE) Office of Hearings and Appeals"), 62 ("Decision of the Secretary of Education, DOE), 63 ("California OAH May 6, 2024 Order").

Moreover, through the monitoring review process, defendants provided plaintiff numerous opportunities to prove eligibility under the EANS program and only suspended The VR School's funding after repeated failures to do so.  *See* Woodcheke Decl. ¶¶ 16-36, Exs. 30, 31, 49, 50. Plaintiff still provides no evidence that he was deprived of "[t]he fundamental requirement of due process": "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Accordingly, the Court finds that no material dispute exists as to plaintiff's procedural due process claim, and that defendants are entitled to judgment as a matter of law.

### III.    First Amendment Retaliation Claim (COUNT III)

Plaintiff contends that defendants engaged in retaliatory conduct by terminating EANS services on May 20, 2023, three days after plaintiff formally complained of racial discrimination by defendants.  Pl. MSJ at 3-4.  Defendants argue that plaintiff cannot show that his discrimination complaint was a motivating factor in CDE's decision either to monitor the VR school or to suspend EANS services.  Def. MSJ at 19-22.

To successfully assert a First Amendment retaliation claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and citation omitted).  The plaintiff must show "that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399 (citation omitted).  A plaintiff may defeat

summary judgment on a First Amendment retaliation claim by offering direct or circumstantial evidence that the protected speech was a substantial motivating factor for the retaliation. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). However, "[t]o avoid summary judgment using circumstantial evidence, a plaintiff must offer circumstantial evidence that is 'specific and substantial.'" *Raphael v. Tesoro Corp.*, 729 F. App'x 566, 568 (9th Cir. 2018).

As discussed above, defendants have put forth considerable evidence demonstrating that The VR School's EANS eligibility status was revoked because plaintiff failed to provide documentation to support the school's enrollment claims (*see supra* Section II). Defendants have also put forth considerable evidence demonstrating that the initial decision to begin a monitoring review was caused by the concerns of self-dealing Degel raised to the CDE on account of an invoice for $220,000 to "InventXR, LLC" describing items to be provided to the VR School. Lopes Decl. ¶¶ 1, 23-24, Ex. 13. Where defendants establish that the same action would have been taken in the absence of plaintiff's complaint, summary judgment is appropriate. *See Burch v. City of Chubback*, 146 F. 4th 822, 839-40 (9th Cir. 2025); *Walsh v. Martin*, 2025 WL 2731851, at *10-11 (E.D. Cal. Sept. 25, 2025) ("The Ninth Circuit has held that where defendants present adequate, non-retaliatory justifications for the challenged actions, summary judgment is proper."). Here, defendants provide ample evidence of adequate non-retaliatory justifications for initiating a monitoring review and ultimately terminating EANS services to The VR School.

Plaintiff fails to rebut defendants' overwhelming evidence of independent and legitimate reasons to suspend EANS services to The VR School. While plaintiff is emphatic that the three-day timeline between his formal May 17, 2023 racial discrimination complaint and the final May 20, 2023 EANS termination letter is "paradigmatic First Amendment retaliation" (Pl. Mot. at 3-4, Pl. Opp'n at 21), the evidence demonstrates that prior to plaintiff's May 17, 2023 complaint of racial discrimination, the monitoring review had already found The VR School's documentation lacking and the decision to suspend EANS services had already been made. Indeed, Lopes sent an email to plaintiff informing The VR School of CDE's decision to terminate EANS to The VR School on April 17, 2023, well before plaintiff emailed his formal complaint. Lopes Decl. ¶ 35, Ex. 22 (Apr. 17, 2023 Lopes Email). Here, the circumstantial temporal evidence of retaliation defendant relies

15

on is certainly not "specific and substantial." *Raphael*, 729 F. App'x at 568 (9th Cir. 2018).

To the extent plaintiff argues that defendants retaliated against plaintiff because of unspecified discrimination complaints he made in 2022, the Court find plaintiff's assertions lack evidentiary support and are insufficient to overcome summary judgment.[14] *See* Pl. Opp'n at 20-21. Plaintiff's opposition brief vaguely refers to discrimination complaints he made starting off in 2022, but it is unclear what plaintiff complained about and when, how, and to whom these complaints were submitted. *Id.*; Dkt. No. 164 at 7. To survive a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. Mere allegation and speculation do not create a factual dispute for purposes of summary judgment. *Witherow v. Paff,* 52 F.3d 264, 266 (9th Cir.1995). Likewise, the mere existence of a "scintilla" of evidence is not enough to create a "genuine issue of material fact." *Anderson.*, 477 U.S. 242, 252 (1986).

In sum, here, nothing in the record would allow a reasonable fact finder to conclude that defendants sought to retaliate against plaintiff on account of his discrimination complaint.

## IV.    Equal Protection & Title VI Claims (COUNTS V & VI)

Plaintiff contends that defendants subjected him to disparate treatment based on his race in violation of Equal Protection and Title VI through the "immediate, harsh termination [of EANS services] for alleged documentation issues," while "White-operated schools received collaborative opportunities to reconcile discrepancies." Pl. MSJ at 4-5. Defendants argue that defendants acted with respect to a nonprofit public benefit corporation, not plaintiff, and that plaintiff "cannot overcome the overwhelming evidence showing that Defendants had legitimate, nondiscriminatory reasons for their actions." Def. MSJ at 22-25.

"The central inquiry in an Equal Protection Clause claim is whether a government action was motivated by a discriminatory purpose. A plaintiff may establish discriminatory purpose by

---

[14] Furthermore, any earlier, 2022 racial discrimination complaints plaintiff may have made are not alleged in plaintiff's complaint. *See, generally*, Dkt. No. 16; *see Terpin*, 118 F.4th at 1113 (unpled claims cannot defeat a motion for summary judgment); *Pickern*, 457 F.3d at 968-69.

United States District Court
Northern District of California

'"produc[ing] direct or circumstantial evidence demonstrating that a discriminatory reason more likely tha[n] not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way.'" *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022) (internal quotation marks and citations omitted). Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to "show a legitimate, nondiscriminatory reason for the challenged actions." *Id.* If the defendant articulates a legitimate motive, the burden "returns to the plaintiff, who must show that the proffered nondiscriminatory reason is pretextual." *Id.* Circumstantial evidence of pretext must be "specific and substantial" to defeat summary judgment. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Direct evidence of pretext is insufficient to raise genuine issues of fact where it is only plaintiff's "own self-serving and uncorroborated affidavit and deposition testimony." *Opara v. Yellen*, 57 F. 4th 709, 726 (9th Cir. 2023). A plaintiff cannot survive summary judgment by creating only a "weak issue" of fact as to whether defendant's motive was untrue, "against a backdrop of abundant and uncontroverted independent evidence that no discrimination has occurred." *Id.* (internal citation marks and quotations omitted).[15]

At the hearing, plaintiff argued that the non-discriminatory reasons defendants articulate for the monitoring review and requested additional documents from the VR School were pretextual. Plaintiff directed the Court to two other docket numbers to support his argument, docket number 178 and docket number 181, Exhibit 3. The Court reviewed the 8 pages of handwritten notes apparently taken on June 2, 2023 in an exhibit titled "Randi Thompson Notes showing when discrimination complaints started." Dkt. No. 181, Ex. 3. Specifically, plaintiff pointed to the notations "When was the first time you raised the issue?" and "5/17, not first time raised issue of discrim." The Court also reviewed docket number 178, which is defendants' objections to plaintiff's

---

[15] Title VI prohibits discrimination in programs and activities receiving federal financial assistance. 42 U.S.C. § 2000d. "To prevail on a Title VI claim, however, a plaintiff must prove (1) that he is an intended beneficiary of the federally-funded program the defendants . . . participated in, and (2) that the defendant intentionally discriminated against him in violation of the statute . . . ." *Epileptic Found. v. City & Cnty. of Maui*, 300 F. Supp. 2d 1003, 1011 (D. Haw. 2003) (internal quotation marks and citations omitted). The Court addresses plaintiff's Title VI claim with plaintiff's Equal Protection claim because the inquiries involve a similar analysis, requiring plaintiff to produce sufficient evidence that a reasonable factfinder could conclude CDE initiated a monitoring review and suspended EANS services because of plaintiff's race.

reply evidence.  The Court does not find either filing indicates defendants had a discriminatory purpose.

Plaintiff cannot overcome the strong evidence of defendants' stated nondiscriminatory purpose, namely that defendants initiated a monitoring review based on a conflict of interest concern and ultimately suspended EANS services because The VR School could not produce the required documentation after numerous opportunities to do so.  Plaintiff's deposition testimony confirms that plaintiff's theory of discrimination is based on speculation, not evidence.  Plaintiff testified that he was not aware of any other EANS applicant that was the subject of a reported conflict of interest concern.  Pl. Depo. 78:10-85:20.  Plaintiff alleges that defendant Lopes made several statements that may demonstrate discriminatory intent (e.g. "Your Constitutional rights to a pre-deprivation hearing were denied" and "You brought this upon yourself" (Dkt. No. 16 at 9); "Cheteni has his hands in too many pots" and "If Cheteni thinks he can build an empire on our watch he is mistaken" (Dkt. No. 72 at 3)).  Plaintiff has never produced any evidence of these statements to the Court and essentially testified in his deposition that he was unsure if he had ever seen any emails with these statements, but that he may have heard about them.  Pl. Depo. at 266:25-287:13.  The only other evidence of discrimination plaintiff points to are unsubstantiated allegations of oral and unrecorded statements.  Plaintiff vaguely refers in his deposition to uncorroborated derogatory racial comments defendant Lopes allegedly made in 2022.  *Id.* at 333:15-335:11.  However, plaintiff's "own self-serving and uncorroborated affidavit and deposition testimony" alone cannot defeat summary judgment.  *See Opara*, 57 F. 4th at 726.  Therefore, plaintiff has not established as a matter of law that it is "more likely than not" that defendants were motivated by a discriminatory reason. *See Ballou*, 29 F.4th at 422.

In sum, plaintiff fails to identify evidence that would allow a reasonable jury to conclude that defendants discriminated against him in violation of Equal Protection or Title VI.[16]

---

[16] Defendants also argue that they are entitled to summary judgment in their personal capacity for each claim based on qualified immunity.  Def. MSJ at 17-19, 21-22, 25. The Court finds it unnecessary to address these arguments, concluding defendants are entitled to summary judgment on each remaining claim in its entirety.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment in its entirety and DENIES plaintiff's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: March 11, 2026

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

19